HERTELL and others *v.* VAN BUREN, BOGERT, *et al.*

---

Where there are several executors, one has the entire power of the whole to dispose of property which they take *qua executors* and the act of one alone is effectual ; but not so of trustees : they have but a joint interest and must act together in a sale, receipt or release.

Testator gave the income of two thirds of his real and personal estate to his two daughters for life and the fee to their issue, and the fee of the other third to his grandsons to take at twenty-one, with the benefit of the income by way of maintenance. And " for the more easy and equal division of the estate," he empowered his executors to sell any part of his estate.

The two acting executors sold a freehold property and took back a mortgage, in their joint names as executors, for part of the purchase money. One of them, prior to the amount being wanted for distribution, sold and assigned the bond and mortgage to a purchaser, and then misapplied the money and failed. *Held*, that these executors took the bond and mortgage as trustees and not in their capacity of executors *qua executors* ; and that the assignment by one was not sufficient to vest the right to these securities in the purchaser and he was decreed to give them up for the *cestuis que trust.*

The objection of another suit pending should be taken before hearing ; and it can only be a good objection where the first suit is between all the same parties and a full decree can be therein had.

---

*May* 22,
1834.

*Executor.*
*Trustee.*
*Vendor and*
*Purchaser.*
*Mortgage.*

JOHN DOVER, by his will dated the twelfth day of October, one thousand eight hundred and twenty, after making certain provisions for his wife in lieu of dower, devised to each of his daughters, Anna, the wife of Stephen Stephens, and Lucretia, the wife of John Wyckoff, for life, the rents, issues and profits of one equal undivided third part of the residue of his estate, real and personal, to be paid to them respectively in half yearly payments for their separate use. After the decease of his said daughters, such third parts of the estate were to go to the lawful issue of his daughters respectively in fee simple as tenants in common. To his grandsons, William Hertell and John D. Hertell, children of his late daughter Jane, he devised and bequeathed the other equal third part of his estate, equally to be divided between them share and share alike, and to be paid to them as they should respectively attain the age of twenty-one years ; the income, during their minorities, to be

applied by the executors of the will, at their discretion, to-
wards the support and education of these grandsons. Then
" for the more easy and equal division of the estate," the will
fully empowered the executors, whenever they should think
it expedient, to sell and dispose of all or any part of the real
estate, at private or public sale; and to execute deeds of con-
veyance to the purchasers in fee simple. Next followed a
direction in these words: " It is my will that all the rest of
my personal estate shall be put out at interest by my execu-
tors, upon sufficient land security, and kept at interest until
the same must be paid as above directed."

The testator died in the month of September, one thousand
eight hundred and twenty-two; and the defendants, Thomas
Van Buren and Peter Wyckoff, two of the persons named as
executors, proved the will and took upon themselves the exe-
cutorship.

Among the real estate, of which the testator died seised,
were two houses and lots known as Nos. 162 and 164 Broad-
way, in the city of New-York, which these two executors af-
terwards, on the twenty-sixth of February, one thousand eight
hundred and twenty-five, by virtue of the power given to them
by the will, sold and conveyed to John B. Yates for twenty-
two thousand five hundred dollars, receiving ten thousand five
hundred dollars in cash, and taking his bond for twelve thou-
sand dollars with interest payable in five years from its date,
secured by his mortgage of the same premises. This bond
and mortgage were taken in the joint names of Thomas Van
Buren and Peter Wyckoff, and, therein, they were described
as executors of the last will and testament of John Dover,
deceased.

On the twenty-third day of March, one thousand eight hun-
dred and twenty-seven, Thomas Van Buren sold and assigned
the bond and mortgage to the defendant James Bogert, for the
consideration of twelve thousand and forty-three dollars, which
money Van Buren misapplied, and he afterwards became in-
solvent.

The assignment of the bond and mortgage to Bogert was
executed under the hand and seal of Van Buren alone ; and
it purported, on its face, to be made by him as " one of the
executors of John Dover, deceased." It did not appear that

Wyckoff, the co-executor, knew anything of the transaction at the time, nor that he concurred in the sale or transfer, or in the misapplication of the money.

The two grandsons of the testator, and to whom one third of the residuary estate was devised, having attained their majority, exhibited the present bill, in conjunction with or on behalf of the other residuary devisees, claiming from the defendants, Thomas Van Buren and Peter Wyckoff, as executors and trustees, an account of the estate and that they might make good all losses; and, as against the defendant Bogert, that the bond and mortgage might be still considered a part of the trust estate and the assignment thereof to him be declared void; also, that the defendant Yates, the mortgagor, might be decreed to pay the amount of the bond and mortgage to or for the use of the *cestuis que trust*.

The cause came up on pleadings and proofs.

Mr. *P. A. Jay*, for the complainants.

Mr. *C. C. King*, for the defendant, John B. Yates.

Mr. *C. Baldwin*, for the defendant James Bogert.

Mr. *Clarkson*, for the executors Van Buren and Wyckoff.

THE VICE-CHANCELLOR :—The great and leading question is with the defendant James Bogert : whether, by virtue of his purchase and the assignment from Van Buren, he has acquired a right to hold the bond and mortgage and receive the money to his own use ?

That there has been a gross breach of trust committed by Van Buren, cannot be denied. It does not appear that he had any occasion to sell the bond and mortgage for the purposes of the estate. The whole of the money was, most certainly, not wanted for immediate distribution among the devisees; and it was safely secured at interest, the principal not demandable short of about three years, which answered the intentions of the will. Anticipating the money, therefore, by a sale and assignment of the securities was an act of misconduct in itself; and his subsequent misapplication of the fund,

followed by his utter inability to replace it, has occasioned a loss which is now to be borne by one of two innocent parties, the devisees of the estate, or the assignee, Mr. Bogert.

In order to determine which is to be the loser, it is necessary to ascertain, in the first place, in what capacity Van Beuren and Wyckoff held the bond and mortgage ; and how far, separately, they could exercise a power of disposition or control over the same ? And then, to look into the circumstances under which Mr. Bogert made the purchase and took the assignment.

Superadded to the office of executor, which, by law, vested them with the possession and control of the personal estate, was that of donees of the power of sale of the real estate, the legal title to which passed by the will and vested in the daughters and grandchildren of the testator, as devisees, subject to the power. This was a naked power or a power in trust, not coupled with any interest ; and it was to be exercised according to the language of the will "for the more easy and equal division of the estate." It was a power, however, which may be said to have attached itself to the office of executor, since it was granted to the executors and not to the individuals by name ; and then, by statute, such of them as qualified and took charge of the administration under the will, were competent to execute the power, without the concurrence of others who might be named in the will to fill the office, but who neglected or refused to accept the appointment; 1 L. N. Y. 366, § 11 ; and hence it is that, in the present case, out of five persons nominated, the two who proved the will and took upon themselves the office, alone made the sale and executed a deed to the purchaser, pursuant to the power, which doubtless vested him with a good title ; but this they could not and did not do merely as executors *virtute officii.*

The act was one requiring a special authority, which, in this instance, was derived from the will ; the aid of the statute being invoked to render the acts of the two, who had taken upon themselves the office of executors, as if all had done so and had united in the sale and conveyance. When the sale was consummated, the money arising therefrom did not become assets to be administered as personal estate. It was still realty belonging to the devisees, to whom the land was

devised. Subjecting the land to the operation of the power of sale in this instance did not change its character or the course of devolution given to it by the testator. The sale was not, in equity, a conversion from one species of property to another. This is clear both upon principle and authority. Even where land is devised to executors to be sold for payment of debts or where executors are empowered, by the will, to sell lands for that purpose without any devise to them, or where they proceed to do so under the authority of the statute by virtue of a surrogate's order, without any authority from the will itself, the surplus money arising from the sale, after satisfying the debts, retains the character and attribute of land and still belongs to the heir or devisee : Leigh and Dalz, 102, 103.

Hence, it follows, that in all such cases as these, the money which comes into the hands of an executor, bearing and retaining the impress of land, is not held by him *qua* executor to be accounted for as personal estate. Another and distinct character, that of trustee, attaches to him in relation to such money. In a recently written treatise on the administration of assets, the author observes that the produce of real estate, sold for the purpose of paying debts, although received by the person who is executor, yet is not received by him as such, but as trustee, to which character the office of administering real estate is more pertinent ; Meggison on Assets, 104. This, I think, is a necessary and just distinction ; and if, in converting real estate into assets, legal or equitable, for the payment of debts and in administering the same, the person is to be regarded in the light of a trustee rather than an executor, how much more emphatically is he a trustee of the proceeds of real estate when, instead of a sale for such a purpose, the person takes upon himself the office of executor sells by virtue of a power in the will with a view to a division and settlement among the devisees.

Besides—the will, in the present case, evidently contemplates a trust in relation to the rents and profits of the real estate during the lives of the two daughters of the testator and the minorities of the two grandsons, as well as of the money to arise from the sale of the real estate, until the proper time should arrive for making a division. And there are no persons appointed to execute these trusts except the executors.

So, as regards the residuary personal estate, after the payment of debts and funeral expenses and the provision for the widow, there is an express trust in the executors to put out the money at interest upon the security of land and to keep it so at interest until it could be paid over upon the division or settlement of the estate.

Thus, in every view of the case, both as to the capital of the real estate and the rents and profits, there is manifestly a trust created by the will and the executors are constituted trustees. They stood, then, in a different relation from that of mere executors; and when the money and the securities arising from the sale of the two lots came to the hands of Van Buren and Wyckoff, they must be considered as taking the same in the character of trustees distinct from that of executors of the personal estate. Describing themselves in the bond and mortgage as executors can make no difference. They could not, by so doing, vest themselves with the property in that capacity; and it must be considered a misdescription, not affecting the true character in which they stood in relation to the real estate.

This distinction—between executors as such and trustees—is all important in the present case.

The objection to the assignment of the bond and mortgage is based upon such distinction. The objection is this, that the assignment purports, upon its face, to have been made by Van Buren, as one of the executors, when, so far as concerns this property, he was *not an executor* and therefore, as such, could pass no title to the purchaser; and that, as *trustee*, he could not, by his separate act or deed, without the concurrence of his co-trustee, lawfully dispose of the bond and mortgage to a third person or confer a right to hold the same against the beneficial owners.

The law, with respect to the power and authority of executors, where several are appointed to the office, is very plain. Each and every executor has, in himself, the entire power to dispose of all the property which they take as such by virtue of their office—there are no parts or moieties between them— as they all represent the testator and fill one office—they are but as one person in the eye of the law. The principle is thus exemplified: "if a horse come to four executors, each

Vol. III.—4

hath a horse and yet all four have but one :" Godolphin, 135. Consequently, every executor may act independently of his co-executors. The act, possession, payment, sale, delivery, gift, release and assent of any one of them is, in general, as effectual as that of all : *Simpson* v. *Gutteridge*, 1 Mad. Ch. R. 609, 616.

With respect to trustees, where there is a plurality, the law is very different, for they have, unless otherwise expressed in their appointment, only a joint power, interest and authority in which they are all equal. One of them cannot act separately and independently of the others. In the sale of property, the receipt of money, the discharge or release of debts, all the trustees living must join or concur in the act, for one cannot sell without the other or desire to receive more of the consideration money or to be more a trustee than his fellow : Fonbl. Eq. Book 2, ch. 7, § 5.

Chancellor Jones, in delivering the unanimous opinion of the court for the correction of errors in *Sinclair* v. *Jackson*, 8 Cow. 582, states it to be a settled rule that when a trust or authority is delegated for mere private purposes, the concurrence of all who are entrusted with the power is necessary to its due execution ; and that this rule applies as well to trusts coupled with an interest or surviving trusts as to naked powers ; and, therefore, a lease not being executed by all the trustees who were living, was, in that case, held to be absolutely void.

This rule applies to the present case. As already observed, the power to sell was delegated to the executors of the will. The two who qualified were competent, by the statute, to execute the power ; and, for the purpose of a sale and division, became trustees. Being so constituted, one alone could not sell and execute the conveyance. To give a title to the purchaser, it was necessary that the sale should be the result, as it in fact was, of their united judgment and action and that both should execute the deed : *Berger* v. *Duff*, 4 J. C. R. 368. So, for the sake of conformity, it was necessary, upon payment of the purchase money, that they should unite in the receipt or discharge to the purchaser ; and, hence, it was proper to take the bond and mortgage in their joint names. Having thus taken the securities, one could not, alone, give a dis-

charge or acknowledge satisfaction of the mortgage, which one of several executors might do: Hampson on Trustees, 85; *Fellows* v. *Mitchell,* 2 Vern. 516; *Murrell* v. *Cox,* Ib. 570.

Upon the same principle and for the same reasons, an assignment or transfer of the bond and mortgage or of the trust property, by one of several trustees, without the assent and concurrence of the other, cannot be allowed to pass a valid title to the assignee. He who takes in breach of a trust and without acquiring a good title becomes himself a trustee: *Wilson* v. *Moore,* 1 Mylne and K. 127. S. C. 8 Legal Observer, 105.

An expression of Lord Ellenborough's in *Denne* v. *Judge,* 11 East, 288, has been used in argument by the defendant's counsel, to show that no distinction should be made between executors and trustees in relation to the proceeds of real estate, where the same person would seem to represent both characters. After adverting to the circumstance in the case cited, that the devise was to five trustees named in trust to sell and not to them as executors to be sold, though the same persons were also appointed executors, the Chief Justice, Lord Ellenborough, observes, they had nothing to do with the land as executors; and he is then reported to have said, " if indeed the fund, when raised, had been distributable by them in the character of executors, that might have brought the case within the rule contended for." I apprehend, that this remark can hold good only in the case of a power or devise to executors to sell real estate by way of a conversion out and out; and which is so intended by the testator for the purpose of paying debts or satisfying pecuniary legacies. There would, then, be a distribution by them in their character of executors; and the fund being assets would be taken by them in that capacity and not as trustees. That, however, is not the present case and the remark of Lord Ellenborough cannot apply.

The next inquiry is, whether there are any circumstances to take this case out of the operation of the rule which has been stated ? That the purchaser, Mr. Bogert, has paid his money innocently and in good faith, and under the belief that the bond and mortgage were held by executors in that capacity, and that one of them was competent to make a valid transfer or as-

1835.

HERTELL
*v.*
VAN BUREN.

signment is not disputed.  He acted under the advice of his counsel, who evidently was misled by the circumstance, that, upon the face of the bond and mortgage, Van Buren and Wyckoff were described as executors.  But this was not the fault of the *cestuis que trust*, who had done nothing to mislead, nor omitted any thing which the law required of them to do, to prevent the misdescription or to correct it.  If the defendant Bogert would claim the right to hold the bond and mortgage as a *bona fide* purchaser without notice of the trust, he should not only deny express notice, but all knowledge of facts from which notice of its being a trust fund might be inferred, and all circumstances calculated to put him on inquiry as to the true character of the mortgagees.  This he has not done.  On the contrary, his answer admits enough to show, that when the application was first made to him by Van Buren to purchase the bond and mortgage, he knew that the mortgage was upon property which formerly belonged to the testator John Dover; that it was given by Mr. Yates, who had purchased the property ; and he says, that Van Buren represented himself to be an executor of Dover's estate, and that he wanted to raise the money secured by the mortgage to pay to the heirs or devisees or some of the heirs or devisees or for the use and purposes of the estate.

Mr. Bogert's ignorance of the law (and he says in his answer he was ignorant) may have been such as to disqualify him from distinguishing property likely to be held by trustees from such as executors are by law invested with ; but the mention of heirs or devisees, to whom it was represented the money was to go, connected with the fact that it was secured upon property which had belonged to the testator, was certainly sufficient to have awakened inquiry as to the point, whether the bond and mortgage were held in trust as a trust fund or were a part of the assets or personal estate in the hands of the executors, as such, and over which they and each of them had the power of disposal; *Pendleton* v. *Fay*, 2 Paige's C. R. 202.  Indeed, it appears, that for the very purpose of ascertaining whether the bond and mortgage could be lawfully transferred, so as to be a valid security to the defendant Bogert, he referred the whole matter to the advice and direction of his counsel, to whom Van Buren went with the papers, proposing

to make the assignment alone or to procure Wyckoff to unite with him in it, as the counsel might deem best. The counsel's opinion was, that Van Buren alone was legally competent to make the assignment ; and that Wyckoff's concurrence was unnecessary. Upon the strength of this opinion, the assignment was drawn and executed by Van Buren ; and the money was paid to him. It does not distinctly appear from the testimony that the counsel examined into the title of the mortgagor. I infer, however, that he did ; and that previous to forming his opinion he became acquainted with the contents of the will and with the origin of the bond and mortgage. He was bound, then, to know that Van Buren and Wyckoff held the bond and mortgage as trustees and not in their character of executors ; and his mistake in supposing that they stood as executors, in respect to the bond and mortgage, cannot serve to make the assignment an effectual one to pass the title to the purchaser, although the mistake was innocently committed. So, again, if the counsel made no investigation beyond what appeared upon the face of the bond and mortgage, and took it for granted that, inasmuch as the mortgagees were there described to be executors, the bond and mortgage belonged to them in that capacity, this would not be enough to give the defendant Bogert an absolute title against the *cestuis que trust*, who have been guilty of no deception, misrepresentation or concealment in that respect. It was his own fault or negligence or that of his counsel, (which is the same thing) that he did not examine more thoroughly the true position which the mortgagees occupied in relation to the money secured by these instruments ; and it was most unfortunate that he came to the conclusion, that Wyckoff's assent and concurrence were entirely unnecessary. If Wyckoff had been sent for to join in the assignment, he might have objected (and as a faithful trustee it would have been his duty to object) to a sale and transfer of the bond and mortgage at a time when the money was not wanted for the purposes of a division. On the contrary, had he united in the act, a personal responsibility would have rested upon him, as well as upon Van Buren, for the misapplication of the money ; and the devisees of the estate might not have been subjected to a loss by insolvency or want of ability to refund.

The complainants' counsel has not contended (and it was not necessary that he should contend) that the assignee, Mr. Bogert, was bound to see to the application of the money paid for the purchase of the bond and mortgage. That doctrine would admit that he acquired a good title; but the position contended for is that no title in law or equity has passed by the assignment, as against the residuary devisees, although for full and valuable consideration paid to Van Buren. Being of this opinion, I must decree that the bond and mortgage be given up for the benefit of the complainants and others interested, as the residuary devisees of the estate; and that the defendant, Bogert, account to them for any payments of interest which he has received upon the bond, they making all just allowances by way of credits to him for any moneys which Van Buren may have paid to them or any of them and which he would be entitled to charge in taking an account as between himself and them in relation to the proceeds of the real estate sold. As Mr. Yates, the mortgagor, is made a party to the suit and is desirous of paying off the bond and mortgage, the decree may direct that he be at liberty to pay the amount into court, and that all proper parties join in executing a certificate of satisfaction to cancel the mortgage of record. He is entitled to his costs of this suit to be taxed; and the same may be paid out of the fund.

A point has been made upon the allegation in the answers of the defendants, Van Buren and Wyckoff, of the pendency of a former suit for an account and settlement of the estate, whether a decree for a general account can be made in the present suit, while the former one is depending?

The objection of a former suit depending has not been made in the proper manner to enable the court to dispose of it, as it ought to have been, in an earlier stage of the cause : Cooper's Plead., 274 ; and it cannot now be permitted to prevail. There should be but one accounting, and that under a decree in one suit. I see no difficulty in making that decree here. All parties are before the court in this suit for that purpose, as well as for the purpose of determining the question of the assignment of the bond and mortgage. To the former suit the assignee, Mr. Bogert, is not a party, nor are the two present

complainants, John D. Hertell, and William Hertell. Hence it is not a bar: *Reeve* v. *Dalby*, 2 Sim. and S. 464.

The reference now to be had must embrace the accounts of the two executors and trustees, with the estate generally, and with the respective devisees ; and, upon the coming in and confirmation of the report, a decree can be made discharging the defendant, Peter Wyckoff, as well as Van Buren, from the trust. All further proceedings in the former suit are rendered unnecessary, and may be stayed. The question of costs, except as to those of Mr. Yates, and all further directions are reserved. (*a*)

1835.

HERTELL
*v.*
VAN BUREN.

(*a*) The great point in this case has been affirmed on appeal to the chancellor. His honor, in affirming the decree, with costs. added the following : "A slight modification however, may be necessary, in a point not suggested to the vice-chancellor, to enable him to make a final decree, protecting the rights of all parties on the coming in and confirmation of the master's report. The appellant, who advanced his money on this assignment, is entitled to protection so far as the money advanced by him was actually applied to the purposes of the trust, and so far as that money or the proceeds thereof can be traced and identified as now existing in available securities, or as being in the hands of the officers of this court, so that it can be thus applied. The decree is probably broad enough now to make it the duty of the master to allow the appellant for any part of the money actually applied for the purposes of the trust, as an offset against the amount received by Bogert on the bond and mortgage. But it may not be broad enough to include any part of the fund paid to the receiver in the former suit, as testified to by Walker, and which may be the avails of the money received from the appellant at the time of the assignment of the bond and mortgage to him. This modification the counsel for the respondents was understood as assenting to on the argument, and must be made accordingly. And the amount and present situation of that fund must be stated in the master's report, and must be transferred to the credit of this cause, so that it may be disposed of under the final decree made therein.

"The proceedings are to be remitted to the vice chancellor."