Nelson, Gh. J.
The great question in the case is, whether the assignment of the bond and mortgage by Van Beuren to Bogert, had the effect to transfer the legal interest therein, or, in other words, whether one of the executors was competent to sell and transfer this item of the assets of the estate, so as to give a complete title to the purchaser. The court below *495 held, that notwithstanding the power given by the will to sell, and dispose of the real estate, and thus, in fact, to convert the mass into money, yet, after it had been thus converted, and existed in the hands of the executors in the state and condition of personalty, it was still to be regarded as land, subject to the rules and principles governing the disposition of real estate ; and that the executors, as such, having no control over the lands, (their powers being limited strictly to the administration of the personal estate,) the sale and assignment by Van Beuren were wholly inoperative and void. The court below also held, that even admitting the bond and mortgage to be a part of the personal assets of the estate, yet, inasmuch as these instruments were made to Van Beuren and Wyckoff in their joint names, though described as executors, it was not competent for one of them to sell and transfer the legal title to the same.
In respect to the first ground, I think the fundamental error lies in a misapprehension of the true nature and character of the fund in the hands of the executors. It is said by the court below to be an established rule in the doctrine of equitable conversion of real into personal estate, that where the devisor directs the conversion for a particular specified purpose, and not absolutely to all intents and purposes, or “ out and out” as the phrase is, courts are bound still to regard the estate as land ; and that no part of the mass thus converted has impressed upon it the character of personalty. Now I think the authorities demonstrate that where the devisor has directed or authorized the conversion of his real estate, even for a particular special purpose, such as distribution, courts are bound, so long as the purpose and object exist and continue, to regard it as of that species of property into which it was directed to be cgnverted ; and, to the extent and for the purpose declared, it is to be treated as money, and not land. This will be found to be the uniform language of all the cases on the subject. . If the purpose and object of the conversion fail altogether, or in part, then the whole estate, in the one case, and the part, in the other, is re *496 garded as an estate or interest undisposed of by the will; and as the devisor, in the event happening, has made no disposition of the estate, it takes the direction given to it by law, independently of the will, and goes to the heir at law. But in the latter case, where there is only a partial failure, if the purposes of the will still require a sale and conversion, the heir takes the part thus undisposed of, as money, and not as land, and, on his death, it will go to his personal representatives. This would seem to be a proper legal view of the case, construing the provision of the will in this case in conformity with the established rule of interpretation, viz. according to the plain intent of the testator. The- whole doctrine of equitable conversion rests upon this ground. The law Regards the property, for all the purposes of the will, in the state and condition of real or personal, exactly according to the character impressed upon it by the manifestation of the testator’s intent. And if we apply this rule to the provision of the will in the case before ns, nothing can be clearer than that, in the event of the election of the executors, which has been made, the testator intended the real estate should be sold and converted into money, and distributed as such among the beneficiaries.
But let us see how the doctrine stands upon authority. The cases are numerous, but I shall refer to a few of them only. In Yates v. Compton, (2 P. Wms. 308,) the testator devised that his executor should sell his land, and purchase with the proceeds an annuity of 100/. for the life of Jane Styles, and should allow to her so much thereof as would support her and her children. He also gave 30/. to each of the children to be charged upon the annuity. Jane Styles, (the intended annuitant,) died soon after the testqtor, and the administrator with the will annexed (the executor having renounced) filed a bill to compel the heir to join in q sale of the lands, It was insisted on the part of the heir, that as the power of sale was only given to the executor for a particular purpose, which had failed, the land ought not to be sold. But the chancellor held, that the intention of the will was to give all away from the *497 heir, and to turn the land into personal estate ; and that this intention must be taken as it was at the death of the testator, not to be altered by subsequent events. He accordingly decreed the lands to be sold, and the proceeds to be paid to the administrator, subject to the payment of the children’s legacies. There, it will be perceived, one of the particular objects for which the land was directed to be sold had failed; but as others existed, viz. the legacies to the children, it was still necessary that the conversion should take place.
In Bartholomew v. Meredith, (1 Vern. 276,) where the testator devised his land to be sold for the payment of portions to his younger children, one of whom died after the portion became payable, but before the sale, it was held that the land should be sold, and that the share of the deceased child in the proceeds of the land) being personal estate, went to the administrator. There, also, one of the purposes of the conversion failed, but others existed requiring that the intent of the testator to change the estate into personalty should be carried out.
In Doughty v. Bull, (2 P. Wms. 320,) the testator devised his lands to trustees, in trust to apply the rents and profits thereof, until sale, for the benefit of his four children, and in further trust, that as soon as the trustees should deem it for the benefit of the children, they should sell the land and divide the proceeds among them in equal shares—the shares of the sons to be paid to them at twenty-one, and those of the daughters at twenty-one, or upon their marriage. The eldest son attained to the age of twenty-one and died without issue, leaving a wife ; and the question arose between one of the children, claiming as heir, and the widow. If the property was to be regarded as'land,-the share went to the heir; if as personal estate, a moiety belonged to the Widow. The master of the rolls decreed that the lands being devised to be sold were thereby rendered personal estate, and that a moiety of the share belonged to the widow of the deceased son, the same as if the estate had already been converted into- money. Thisx decree-was affirmed on appeal by the chancellor. The' case, it will *498 be perceived, is, in all its circumstances, like the one' in question. The direction was to sell the land and convert it into personal estate for the sole purpose of division among the children ; and no doubt was entertained that it partook of the character of personalty even before the sale. The discretion of the trustees in this respect was regarded as a question of time, and the intent to have the land sold as absolute. Hence it was held, that the property should be deemed money in the hands of the trustees ; and this, though one of the purposes of the conversion had failed before it took place. If it be said there was in that case a conversion “ out and out” for all purposes, then it follows that a direction to sell for the purposes of a division is to be regarded as one- of that character, and that the estate becomes absolutely changed into personal assets.
The same doctrine is maintained in Maberly v. Strode, (3 Vesey, 450,) where a sale was directed for the purpose of distribution ; also in Wright v. Wright, (16 Vesey, 188,) and in Fletcher v. Ashburner, (1 Bro. Chan. Rep. 497.) But without going over the cases, for they are numerous, I will only refer to the clear and satisfactory exposition of the principles of equitable conversion by Sir John Leach, vice-chancellor, in Smith v. Claxton, (4 Mad. 484,) decided in 1819. That case was twice argued, all the authorities were collected and fully examined, and the principles laid down cover the whole question before us. The will directed, first, a sale of certain lands for the payment of debts and legacies, the surplus, to be paid to the wife of the testator; and secondly and thirdly, a sale of certain other distinct parcels of land for the purposes of division between the testator’s children and grandchildren, depending upon the occurrence of certain events. The vice-chancellor said : “ Where a devisor directs his real estate to be sold, and the produce to be applied to particular purposes, and those purposes partially fail, the heir at law is entitled to that part of the produce which in the events is thus undisposed of. The heir at law is entitled to it, because the real estate was land at the *499 devisor’s death ; and this part of the produce is an interest in that land not effectually devised, and which therefore descends to the heir.” He further observed : a Under every will, when the question is, whether, the devisee or the heir failing, the devisee takes an interest in land, as land or money, the true enquiry is, whether the devisor has expressed a purpose that, in the events which have happened, the land shall be converted into money ? Where a devisor directs his land to be sold, and the produce divided between A. and B., the obvious purpose of the testator is, that there shall be a sale for the convenience of division; and A. and B. take their several interests as money, and not land. So if A. dies in the life time of the devisor, and the heir stands in his place, the purpose of the devisor, that there shall be a sale for the convenience of division, still applies to-the case ; and the heir will take the share of A, as A. would have taken it—viz., as money, and not land. But in the case put, let it be supposed that A. and B. both die in the life time of the devisor, and the whole interest in the land descends to the heir ; the question would then be, whether the devisor can be considered as having expressed any purpose of sale applicable to that event, so as to give the interest of the heir the quality of money. The obvious purpose of the devisor being, that there should be a sale for the convenience of division between his devisees, that purpose could have no application to a case in which the devisees wholly failed, ánd the heir would therefore take the whole interest as land.”
The first devise, in that case, had wholly failed; and, agreeably to the above lucid exposition of the law, the heir took the estate as land. In respect to the second and third devises, one of the two devisees between whom the estates were to be divided had died, but as the purposes of a sale for a division still applied, the fund was held to be personal estate, and the heir took the share as A. would have taken it, viz. as money and not land; and he being dead, it consequently passed to his personal representative, and not to his heir who had claimed the interest.
*500 Now, I apprehend, upon these cases, and I might refer to numerous others, for they all hold one uniform language upon this point, it may be considered as established beyond all controversy, that where the testator directs his lands to be sold for the purpose of division among his children and grandchildren, so long as this purpose of the sale and conversion exists and is necessary to carry out the intent of the will, so long the quality of personalty is effectually stamped upon the estate in the hands of the executors; and courts are bound to consider it as subject to the laws of that species of property into which it was intended to be converted.
That the executors take the estate thus converted, in the character of their office, is also fairly deducible from another class of cases kindred to those to which I have already referred. It has been settled law since the Year Books, that a power given in a will to sell land for the purpose of paying debts and legacies, or for making division of the produce, without naming the donee, will vest in the executor by implication. This is deemed to be fairly inferable from the fact that the fund is to be distributed by him, no contrary intention appearing in the will. The cases on this subject are collected by Mr. Sugden, in his valuable treatise on powers, and sustain, beyond all question, the principle stated. (1 Sugd. on Powers, 134 to 138, ed. 1837.)
In the case of Tylden v. Hyde, (2 Sim. & Stu. 238,) the testator directed his real and personal estate to be converted into money, and the interest thereof to be divided among his sisters ; and it was held that a power to the executors to sell the property was implied. The vice-chancellor stopped the argument, and observed ; Where there is a general direction to sell, but it is not stated' by whom the sale is to be made, there, if the produce of the sale is to be applied by the executors in the execution of theif office, a power to sell will be implied to the executors. Here the produce of the sale is to be confounded with the personal property which must necessarily be divided by *501 the executors ; and, by the rule which I have stated, a power is therefore implied to the executors,”
It is supposed, however, even admitting the conclusion to be correct that the produce of the land is to be deemed personal estate in the hands of the executors, that still the fund does not belong to the personal assets of the estate, nor vest in the executors as such ; but that they hold in the character of trustees, in trust to distribute among the children. This I admit to be true to a limited extent and under particular circumstances that I shall mention ; but the doctrine has no application to the present case. We have seen that, where the purposes of the conversion fail altogether or in part, the whole interest in the one case, and the particular portion of it in the other, is regarded, in the events happening, as an interest undisposed of'by the will; and that then, the object of impressing upon it the character of personalty having failed, it partakes of the nature of that species of property to which it before belonged—i. e. land— and goes to the heir. But if, notwithstanding a partial failure, the purposes of the will still require the conversion, though the heir takes the share, failing the devisee, he takes it as money—that being the state in which it is directed to be converted—and not as land. Now, so far as regards this undisposed of interest, that goes to the heir and is not to be distributed according to the purposes for which it was directed to be converted, that is, the purposes of the will. It is not, I admit, considered strictly as belonging to the personal estate of the testator, or as constituting a part of the general assets; but it is regarded, by this total or partial failure, as having become separated from the mass of the personalty, and held by the executors as trustees for the heir, or those to whom it may belong.
So, in case of a devise to the executors to sell the real estate to pay debts and legacies or both, the surplus of the moneys beyond what is sufficient for this purpose, constitutes no part of the general assets, but results to the heir, as partaking of the nature of the estate out of which it was raised. Why 1 *502 The obvious answer is, because it was not the design of the testator to stamp the character of personalty upon the estate, beyond what was sufficient to pay debts and legacies. But within that limit the intent is clear, and the quality and character of the estate intended, complete and absolute. This idea will be more fully illustrated by a reference to the manner of distributing the produce of real estate directed to be sold for the payment of debts and legacies. For a long time the fund was considered legal assets in the hands of the executors, and distributed, in the ecclesiastical courts, in the ordinary course of administration. This was the doctrine that generally prevailed until the case of Silk v. Prime, decided by Lord Camden in 1768. (1 Bro. Ch. Rep. 138, in note.) There, in analogy to the case of a devise of lands to trustees, not executors, to be sold for the payment of debts and legacies, where the distribution was necessarily made under the jurisdiction of a court of equity, and by that court always held to be equitable assets, distributable equally among all the creditors, on the principle that “ all debts being,in a conscientious regard, equal, and equality the highest equity,” the court seized upon the idea that when the estate was devised even to executors, or a power given to them in trust to sell and pay debts, they were in some sort to be regarded as holding the fund in trust, which might properly subject it to that jurisdiction ; by which means the court was enabled to apply a new and more equitable rule in the distribution of the fund. Since then, the produce of the land has been considered equitable assets, to be distributed equally among all the creditors. (Toller, 413 to 415, ed. of 1815; Ram on Assets, chap. 26, and the cases there cited.) But this did not change the nature of the fund, nor the executor’s power of disposition over it. It was still personal assets vested in and administered by him among the several creditors and legatees. The effect of the decision was only to apply a new rule in the course of distribution, and turn what was before regarded as legal, into equitable assets, for the purpose of a more just and equitable distribution by the executor.
*503 I have no doubt, therefore, that the fund in this case is to be regarded, to all intents and purposes, personal assets of the estate in the hands of the executors ; that their power over it is as full and perfect as in the case of the personal estate of the testator with which it is blended ; and that the whole, in case of a sale in pursuance of the power given to them in the will, is to be distributed as money, and no part as land, or as partaking of the nature and character of real estate.
The next question is, whether it was competent for one of the executors to assign and transfer the legal interest in the bond and mortgage to Bogert, the appellant. And this turns upon the question, whether they held the bond and mortgage in the character of executors, or in their own personal right. We have seen that both instruments are, in terms, made to them in their representative capacity ; and it is admitted to be a general rule, that one of two or more executors possesses the power of selling and disposing of the personal assets of the estate as fully as if all were to join in the act of transfer. It would therefore seem to follow naturally enough, that if Van Beuren and WyckofF are to be regarded as invested with the interest in the bond and mortgage in their character as executors, as part of the fersonal assets of the estate, that the bona fide transfer by one, for full consideration, would pass that interest to the purchaser.
It appears to have been once understood that an executor could not, by possibility, acquire an interest in his representative character in a promise to, or undertaking with him, in that capacity, but that he must, legally and of necessity, be vested alone, by operation of such engagements, in his own personal right. The case of Betts, ex'r &c. v. Mitchell, (10 Mod. 316,) decided in the K. B., 1 Geo. 1, was to this effect. The plaintiff brought an action upon a promissory note made to him as executor, and, in counting upon it, the promise was laid as made to him in that character. There were other counts on promises to the testator. It was determined that the plaintiff could not recover, on the ground that he must be regarded as *504 holding the note in his own right, and not as executor; and that, therefore, there was a misjoinder of counts. It was there said that, on the death of the executor, the note would go to his administrator, and not to the administrator de bonis non. We will see hereafter that this idea has been long exploded. The same doctrine was held in the case of a bond to the plaintiffs as executors, in Hosier and another v. Lord Arundell, (3 Bos. & Pull. 7,) decided by the C. B. in 1802. (a)
But in King and others v. Thom, (1 T. R. 487,) decided by the If. B. in 1786, where a bill of exchange had been endorsed to the plaintiffs as executors, and, in counting upon it, the promise was laid to them in that character, it was held that they were entitled to recover. Ashurst, J. says; “It must be taken for granted that the endorser was indebted to the testator, and to the plaintiffs as executors, and so he might indorse to the plaintiffs as such executors. Then they held the bill as executors, and, upon the acceptor’s refusing to pay it, they may declare upon the right in which they hold it.” “ They have only declared according to the truth of the case.” Buller, J. concurred.
The same doctrine was more fully examined and declared in Cowell and wife, adm'x, &c. v. Watts, (6 East, 405.) There the plaintiffs declared, in the first count, in right of the wife as administratrix, on promises made to Cowell and his wife as administratrix, for goods sold and delivered by them in llieir representative character to the defendant. There was a second similar count on a quantum valebant, and a third upon an account stated with the wife as administratrix. The defendant moved in arrest, after verdict, on the ground of misjoinder of counts. The court examined all the cases, which they admitted to be contradictory, and laid down the broad proposition, which has been adhered to ever since, that where" the promises are made to the executor as such, and the money when recov *505 ered would be assets, the executor may declare for it in his representative character. The court referred to and approved the case of King and others v. Thom, and repudiated the reasons assigned in the cases opposed to it. No doubt was entertained that the promise to the plaintiffs in right of the wife as administratrix, vested them in interest in their representative character.
The case of Catherwood v. Chabaud, (1 Barn. & Cress. 150,) is still more direct to the purpose. There, a bill of exchange had been endorsed, generally, but delivered to S. C. as administratrix of J. C. for a debt due to the intestate. S. C. died after the bill became due and before it was paid; and it was held that the administrator de bonis non of J. C. might declare upon the bill as such, and recover the amount as unadministered assets of the estate. Abbot, Ch. J. observed : “ it has been decided in a variety of modem cases, that an administrator may sue as such under a promise made to him in his representative, character; and that principle governs my opinion upon the present case, for where the cause of action is such that the first administrator may sue in his representative character, the right of action devolves upon the administrator de bonis non of the intestate.” Bayley, J.s referring to the cases of King and others v. Thom, and Cowell and wife, adm’x, v. Watts, said, if the administrator dies intestate, without having sued upon such a promise, the administrator de bonis non may sustain an action upon it; for he succeeds to all the legal rights which belonged to the administrator in his representative capacity. Here S. C., the administratrix of J. C., might have sued as such upon the bill in question. This action was therefore properly brought by the administrator de bonis non.” The decision in this case directly overrules the principal ground relied on in Bell v. Mitchell and Hosier and another v. Lord Arundell, for refusing to allow the executor to recover in his representative character, in the one case upon an endorsed bill, and, in the other, upon a bond made to himself in that character. The same principle was strongly asserted in the recent case of Aspinall v. Wake, *506 (10 B 'mg. 51,) where it was held, that the executors might sue, as such, for the price of goods of the testator sold by them, after his decease, to the defendant in the course of dealing with him in their character as executors. Tindal, Ch. J. referred to the case of King and others v. Thom, and observed that, if bills had been given for the goods to the plaintiffs as executors they might have sued upon them in that character; and that it would be capricious to say they might not also sue as executors for the original consideration of the bills,
In Clark v. Hougham, (2 Barn. & Cress. 149,) the plaintiff ■ was allowed to recover, in her representative character, money which she had paid, as such, through mistake, to the defendant.
Now, the principle deducible from all these cases, I apprehend, conclusively disposes of the present question. Why was the executor or administrator allowed to maintain the suit in iris representative character, where the promise or contract was made to and with himself as executor 1 Confessedly for the reason that he was vested, in interest, in the subject matter of the promise or contract in his representative character and capacity. In the fwo cases of suits on bills of exchange, the plaintiff was regarded as holding the securities (as executor, in the one case, and as administratrix in the other,) as belonging to the assets of the estate j and it was held that he could deal with the paper accordingly. So completely was the latter deemed to be vested in her, in her representative character,' that the bill passed with the remaining' unadministered assets: to the administrator de bonis non, by the mere operation ot law. And being thus vested in interest, it necessarily follows that the power of control and disposition over thi item of the assets is as complete and absolute as in respect to any other belonging to the estate.
The case of Smith v. Whiting, (9 Mass. R. 334,) referred to by the chancellor, is an authority against this conclusion But the decision in that case was obviously put upon the cases of Betts v. Mitchell, and Hosier and another v. Lord Arundell, the principle of which, we have seen, has been 'long overruled. *507 It was held in Smith v. Whiting, that one of the payees could not transfer the interest in the note by endorsement, because the executors were regarded as holding the security in their individual capacities. The court say: “ The promisees; not Being copartners, had each but a moiety. One therefore could not assign the whole.” But if both had been considered as holding the note in their representative character, then; each representing the testator, the act of one would have been as ef fectual to pass the interest in the note as the act of all. (Toller, 37, 360, ed. of 1815, and the cases there cited.)
Assuming that Van Beuren, the executor, was competent to sell and assign the bond and mortgage, then there cannot be a doubt that Bogert acquired a complete title to the money due thereon ; for it is admitted he purchased in good faith and for full value advanced at the time. There is no pretence for the charge of collusion with the executor, or of knowledge on the part of Bogert that the executor intended to misapply the asstets, or of fraud of any description. He paid the full face of the bond m cash, on a purchase in the usual way; and, upon all the cases, assuming that one of the executors alone had power to assign and transfer the interest in the securities, Bogert has established as perfecta right to the money thereby secured, as if Van Beuren had been owner in his own right. (M’Leod v. Drummond, 17 Ves. 153 ; Field v. Schiefelin, 7 John. Ch. Rep. 150; Colt v. Lasnier, 9 Cowen, 320.)
I am of opinion, therefore, thar the decree below ought to be reversed, and shall vote accordingly.
Bockee, Senator.
By the will of John Dover deceased his executors were authorized to sell all or any part of his real estate at their discretion. This power was granted to them professedly 66 for the more easy and equal division of his estate.” So far as related to the sale of the real estate, the execuir.r doubtless acted in the capacity of trustees, and it was necessary for all to join in the conveyance in order to give a good title. The power, however, having been executed, and the estate, in *508 pursuance of the directions of the will, converted into personalty, a different question arises. Van Beuren and Wyckoff are clothed by the testator with the double character of executors and trustees. They act as executors in relation to personal assets, and as trustees in regard to real estate. But the special directions of the will are, to convert the whole real estate into personal. When so converted, is it to be considered in the hands of Van Beuren and Wyckoff as executors, or as trustees 1 No further act was to be done by them but to divide the proceeds among the children of John Dover, according to the directions of the will. This act belongs to the character and appropriate duty of executors. After conversion, the estate became an aggregate whole in the form of personal property—the testator having made no distinction between the avails of his real estate and his personal property. The whole constituted one mass, to be divided in the same way by his executors. Is not the fund raised by the sale of the real estate distributable by Van Beuren and Wyckoff in their character of executors, as much so as any personal property which belonged to the testator 1 Does not the will in this case authorize and direct a conversion of the entire real estate into money to be paid to the children and grandchildren of the testator 1 If so, I think it fairly comes within the principle stated by Lord Ellenborough in the case of Denne v. Judge, (11 East, 288,) in which he says, that if the same persons are both trustees and executors,- and a conversion out and out of the entire estate into money is directed, the ■ fund would be assets in their hands as executors. It comes also within the rule admitted by the vice-chancellor, (3 Edw. Ch. Rep. 27,) that where there is a distribution in the character of executors, the fund, being assets, would be taken by them in that capacity, and not as trustees. The principle laid down by the vice-chancellor, (Id. p. 24,) is, that where land is devised to executors to be sold for the payment of debts, or where executors are empowered by will to sell lands for that purpose, without any devise to them, or where they proceed to do so under the authority of *509 the statute by virtue of a surrogate’s order, without any authority from the will itself, the surplus money arising from the sale, after satisfying the debts, retains the character and attributes of land, and still belongs to the heir or devisee. All this is very true. The surplus money is the residuum of the real estate after a sufficiency has been sold for the payment of debts, and should go where the real estate would itself have gone. There is good reason in all such cases that the surplus money should bear and retain the character and impress of land, and not be accounted for by the executors as personal estate ; because, in strictness, no more land ought to be sold than is sufficient to satisfy debts, and the excess ought to remain specifically as real estate. The principle of the cases on this subject have no application to the one now before the court. Very different, I apprehend, is the present case, where the entire real estate is to be converted into money, which, with the personal estate, is to constitute the fund for distribution by the executors. Such must, have been the intention of the testator, and such must have been the view entertained by the respondents themselves when they filed their bill against the executors to compel them to account. It was a late discovery that Mr. Bogert was to be brought in to answer for the misapplication of funds by the acting executor. It must be admitted that Bogert has acted with the most perfect good faith. He dealt with Van Beuren as the only resident acting executor, who was in good credit at the time, under a representation that the money was wanted for the purposes of the estate. He had no reason to doubt this representation, or to entertain any suspicion that the money would be misapplied. Under such circumstances, it would be a very great hardship to take from Mr. Bogert some fifteen thousand dollars, probably the earnings of a life of industry, by means of any of those sharp “ quillets” of the law against which the most astute and experienced lawyers would be unable to guard. If any one must suffer from the default of Van Beuren, and from the misplaced confidence which the testator reposed in him, it is more reason *510 able that it should be the complainants, than that the loss should be made to fall upon Mr. Bogert.
I do not perceiye that there is any good reason for the distinction, as regards the power of executors, between obligations given to the testator, and those given to executors as such, where the fund is really and truly assets in their hands. Chancellor Kent, in the case of Sutherland v. Brush, (7 John. Ch. Rep. 17,) repudiated such a, distinction, and, in this particular, his decision has not been overruled, nor is it inconsistent with the case of Coddington v. Bay, (5 id. 54.) Chancellor Kent’s decision may have been erroneous and inconsistent with the principle of Coddington v. Bay, upon the ground that Brush was not a bona fide purchaser. It does not follow, however, that he was in error in deciding that one of several executors could transfer to a bona fide purchaser a security given to them jointly as executors. The error, if any was committed by Chancellor Kent, was on a point having no relation to the question in the present case. The maxim, ufalsus in uno fialsus in omnibus,” sometimes applied to witnesses, would be very ungracious in its application to the decisions of judicial tribunals.
I am of dp'inió'n that Van Beuren and WyckofF held the bond and mortgage in question as executors ; that one of them had the same power to transfer these securities to a bona fide purchaser as if they had been given to the testator ; that Mr. Bogert was such purchaser for a full and valuable consideration; that his conduct was honest, guarded and cautious 5 that he is not chargeable with notice of any facts which could implicate him as having colluded with Van Beuren; and that the assignment from Van Beuren gave him a good title to the bond and mortgage. But if this were not so, I am further of the opinion that, under all the circumstances of this case, the equity is so strong in favor of Bogert that it ought to be decreed that WyckofF, as executor, should join in the assignment, in order to perfect Bogert’s title. The decree of the chancellor ought therefore to be reversed.
*511 Fbanklin, Senator.
The principal question in this case is, whether by the assignment executed to James Bogert by Thomas Van Beuren, one of the executors of John Dover deceased, the former acquired a legal title to the bond and mortgage in question, and can receive the moneys secured thereby to his own use and benefit. John Dover, by his will, dated the 12th day of October, 1820, after providing for the payment of his debts and making a provision for his wife in lieu of dower, gave to each of his daughters, Anna, (wife of Stephen Stevens) and Lucretia, (wife of John Wyckoff,) during their natural lives, the rents, issues and profits of one equal undivided third part of all the rest, residue and remainder of his estate, both real and personal, for their own use, to be paid to them in half yearly payments. He also gave to his grandsons William Hertell and John D. Hertell, and to their heirs, executors, administrators and assigns forever, as tenants in common, the remaining one equal undivided third part of his estate, both real and personal, to be divided equally between them, and to be paid to them as they should respectively attain the age of twenty-one years; the income thereof during their minorities to be applied by his executors, at their discretion, towards the support, maintenance and education of said grandsons. Then, for the more easy and equal division of the estate, his executors were fully empowered, whenever they should think it expedient, to sell all or any part of his real estate for the most money that could be had for the same, and to execute good and sufficient deeds of conveyance for the same in fee simple. The will further directed, that all the rest of the testator’s personal estate should be put out at interest by his executors upon sufficient land security, and kept at interest until the same must be paid, as therein provided. The testator died on or about the eighth day of September, 1822, and Thomas Van Beuren and Peter Wyckoff proved the will and took upon themselves the burthen of its executicn. Anna, one of'the children named in the will, has since died, leaving her husband and seven children, some of whom are infants under the age of twenty-one years, her surviving. The testator *512 died seised, among other real estate, of two houses and lots of ground situated in the city of New-York, and known as numbers 162 and 164 Broadway, which, on the 26th day of February, 1825, were sold to John B. Yates, by the two acting executors, in virtue of the power contained in the will, for the, sum of $22,500, of which sum $10,500 was received in cash and the residue secured by the bond and mortgage of Yates, bearing date the said 26th day of February, 1825. The bond and mortgage were executed to Van Beuren and Wyckoff, “ executors of the last will and testament of John Dover, deceased,” and were conditioned for the payment of $12,000 with interest, on or before the expiration of five years from the date thereof. On the 23d day of March, 1827, Van Beuren sold the bond and mortgage to Bogert, for $12,043, and executed to him an assignment of the same, in which he was described as 61 Thomas Van Beuren of the city of New-York, physician, and one of the executors of John Dover, deceased.” The moneys thus received were misapplied by Van Beuren, who afterwards became insolvent.
Here then is presented the question, which of two innocent parties is to bear the loss occasioned by this breach of trust committed by Van Beuren, viz. the devisees of the estate, or the assignee ; and in order to arrive at a correct conclusion, it is necessary to examine in what capacity Van Beuren and "Wyckoff held the bond and mortgage.
It is a well settled principle of law, that the avails of real estate are not assets to be administered by executors as personal estate, but are still realty, belonging to the devisees to whom the land has been devised. Consequently, the sale in this case was not a conversion from one species of property to another ; for where land is sold for the payment of debts under authority given in the will, or by an order of the surrogate, the surplus, after the payment of the debts, still retains the character of realty and belongs to the heir or devisee. The executor, as such, can have no power or control over such surplus, but holds the same in his character of trustee, and not as executor. It is evident *513 to my mind, from the terms of this will, that the testator designed to create a trust; because he directs that the rents, issues and profits of one equal undivided third part of the remainder of his estate, both real and personal, shall be .paid to his daughters in half yearly payments, and that the income of one other equal undivided third part shall be paid to his two grandsons during their minorities, and be applied by his executors at discretion towards their support, maintenance and education ; and in the residuary clause of the will there is also an express trust created. If he had designed that other persons than those named as executors should have executed these trusts, he would have named them for that purpose; but his not having done so, leaves the presumption that he intended his executors should act as such trustees, and so the law presumes.
It has been urged in argument by the counsel for the appellant, that as the bond and mortgage purports to be in the names of Van Beuren and Wyckoff as executors, and as the assignment purports to be executed by the former as one of the executors of John Dover deceased, that therefore the appellant was not bound to look beyond the description contained in the bond and mortgage and the assignment. I apprehend that this cannot vest the title in them as executors, if they are not so in fact under the legal construction of the will. Suppose they had been therein described as two of the children and heirs at law of John Dover deceased : that certainly would not give them authority to convey as such, and it would have been no excuse for a purchaser to come into this or any other court and offer as a plea in bar to the claim of the real owner, that he was misled by such description, that he parted with his money or property in good faith, and that therefore he should hold the subject of his purchase against the person legally entitled thereto. The words, i£ executors,” &c. must be considered as mere words of description, without any binding force, unless the facts legally warrant the description ; and it was the duty of the appellant, or his counsel, which is the same thing, *514 to have ascertained in what capacity they acted, and not to have trusted to the mere addition to the qame contained in the assignment.
For what purpose was authority given to the executors to sell the real estate 1 “ For the more easy and equal division of my estate,” are the words of the will; and when the executors had sold it for that purpose, (and they could have sold it for no other,) the proceeds partook of the character of real estate, . and therefore the bond and mortgage, being the proceeds of real estate, were held by them as trustees for the benefit of the devisees, for the purpose of making a more .easy and equal division of the estate.
Having thus arrived at the conclusion that Van Beuren and Wyckoff were acting in this transaction in the capacity of trustees, and not of executors, the next question which arises is, whether the act or concurrence of all the trustees who take upon themselves the execution of the trust, is necessary to the due execution of such trust or power; or whether one of several trustees has authority to sell or otherwise dispose of the ' property held in trust. In the case of Sinclair v. Jackson, (8 Cowen, 583,) to which allusion was so frequently made in the course of the argument, Chancellor Jones, in delivering the opinion of this court, says : “ The powers of the trustees, whether express or implied, must be executed strictly ; and the principle applies equally to trusts or powers coupled with an interest, and where the trust or power will survive, as to mere naked authority ;” and therefore a lease not having been executed by all the trustees living, was held to be absolutely void. So also in the case of Green v. Miller, (6 John. R. 39,) it was-held that, where a trust or authority is confided to several persons, for a private purpose, the concurrence of all is necessary to its due execution. This doctrine appears to be recognized and established in all the cases to which my attention has been called, and" has not to my knowledge ever been overruled, but is at this day the firm and settled law of the land.
It was also urged by the counsel for the appellant, that, if *515 the hardship of the case be looked to, this court should lean in favor of a party who has acted in good faith, and paid out of his own hard earnings §12,000. But I understand the rule of law to be, that when one of two innocent parties must suffer loss by the fraud or wrong of a third, the one who by his act has enabled the fraud or wrong to be committed, shall himself bear the loss. In this case, if the appellant had refused to advance his money upon the assignment of the bond and mortgage by Van Beuren alone, and had insisted upon the signature of Wyckoff, for aught that appears upon the pleadings and proofs, the latter would have refused to sanction the transfer, knowing, as he did or as he was bound to do, that the money was not wanted at that time for the purposes of the estate ; and in the event of his complying with a request to join in the assignment, he would probably have been held liable for the loss which afterwards occurred, as it would have been a palpable breach of trust on his part towards those whose interest he was bound to protect; because, by the express terms of the will, the estate was to have been kept out at interest upon real security until the same was to be paid as therein directed. It cannot be pretended that it was necessary at that time to convert the bond and mortgage into cash ; for the proceeds were again loaned out upon marine policies and other personal securities, and finally lost in consequence of a departure from the specified conditions of the trusts. Again, the devisees under the will of John Dover, the respondents in this cause, have been guilty of no act by which they can be charged with deceiving the appellant, or inducing him by any representations of theirs to invest his money in the manner in which he has done. It was not in their power to raise a warning voice in order to prevent him from so doing; for they knew nothing of the transaction at the time, and were never consulted in relation to it. On the other hand, evidence was presented to the appellant that this bond and mortgage were taken by Bogert and Wyckoff in the character of executors, they being therein described as such, and that it was for part of the consideration *516 money on the sale of the Broadway property. . It was therefore the appellant’s duty, or that of his counsel acting for him, to ascertain how and in what manner or character the bond and mortgage were held by the executors, and he not having availed himself of the opportunity to do so, must submit to the consequences of such neglect. The devisees have the right and are entitled to the whole trust estate, in whose hands soever the same may be, and the appellant, being in possession of part of this estate wrong- ' fully and without any legal title, is bound to give up the bond and mortgage. I am therefore of the opinion that the decree of the chancellor should be affirmed.
Huger, senator, delivered a written opinion in favor of reversing the chancellor’s decree.
On the question being put, u Shall this decree be reversed ?’7 all the members of the court who heard the argument, (eighteen in number,) except Franklin and Paige, senators, voted in favor of reversal.
Decree reversed.

 See Partridge v. Court, (5 Price, 412, 7 id. 491, S. C. on error;) also Pawley v. Newton, (6 Taunt. 453.)