JOSÉPH BATTELL *v.* JOHN MATOT.

CROSS CAUSE: JOHN MATOT *v.* JOSEPH BATTELL
& F. G. WRIGHT, ADM'R OF LEWIS
TREADWAY'S EST.

[In Chancery.]

*Former Suit. Statute of Frauds. Pleading. Standing
Trees. Cross-Bill.*

1. FORMER SUIT. PLEA. Objection to the pendency of a former suit must be taken by plea and not by answer.

2. STATUTE OF FRAUDS — PLEADING. An admission in a bill brought to restrain the cutting of standing trees, that the defendant had made a verbal contract with the owner for the sale of the trees, is a formal waiver of all benefit derivable from the Statute of Frauds, unless at the same time the statute is insisted on in clear and explicit language. It is not sufficient to allege that it was a " verbal contract," and that it "invests the defendant with no title to the trees."

3. WAIVER OF BENEFIT OF STATUTE PERMANENT. A failure to expressly claim the benefit of the statute not only amounts to a renunciation of such benefit, but the effect is permanent, and not confined to the existing issues; thus, the orator in the original suit having failed to claim in explicit language the benefit of the statute, *it was held* that he could not set up the statute as a defence to a cross-bill.

4. CROSS-BILL — STATUTE OF FRAUDS — PLEADING. It is not a correct pleading of the Statute of Frauds in answer to a cross-bill brought to enforce specific performance of a verbal contract for the sale of standing trees, to admit in substance the contract, and deny that the orator was " equitably or morally bound to carry out said agreement," etc.

5. CROSS-BILL — STANDING TREES. A verbal contract for the sale of standing trees will be specifically enforced by cross-bill, when the contract is admitted in the answer, and the statute is not correctly pleaded.

6. WAIVER — INJUNCTION — CONTRACT. Allowing one to proceed under a verbal contract for the sale of trees is a waiver of the time when he must furnish the stipulated security for payment; and reasonable further time will be given to the party to furnish security, when performance has been prevented by an injunction.

BILL IN CHANCERY. The cause and cross-cause were heard on a master's report, December Term, 1884, Addison

County, VEAZEY, Chancellor. Decree *pro forma*, and without hearing, that the orator is entitled to a decree according to the prayer of his bill; and that the cross-bill of said Matot be dismissed.

The bill was sworn to July 21, 1882; and avers, that on June 7, 1882, one Treadway was the owner of 138½ acres of land situated in Middlebury, and conveyed the same to the orator; that upon a considerable portion of said land is a growth of trees suitable for wood, etc.; that "said land adjoins the home premises of the orator, and from its location and the growth of trees upon it considerably enhances the beauty, attractiveness, and value of the orator's homestead"; "that said John Matot and said Treadway, sometime in the spring of 1882, and previous to said conveyance, entered into a verbal contract which was never reduced to writing in any form, whereby the said Treadway sold or agreed to sell to the said Matot all the standing trees, wood, and lumber on said land, to be removed within two years, for the sum of $1,400, to be paid therefor by the said defendant, and the payment of which was to be secured in some way by the said defendant. As to the precise method of security the orator cannot positively say, though he is informed and believes that it was to be by some sort of a guaranty from the Vermont Central R. R. Co., to which it was contemplated at the time of said sale from Treadway to the defendant the wood so to be taken from said land would be delivered by the defendant; of which contract the orator had notice previous to his purchase of said land."

It also avers, that the defendant had cut about 200 cords of wood on said land; that he claims under said contract to be the owner of the wood and standing trees on the land; that he is insolvent; that if he should cut the rest of the trees the injury would be irreparable to the orator; "that said contract, even if proper security for the payment of the $1,400 had been furnished, invests the defendant with no title to or legal interest in the trees uncut and standing upon said land but the orator is informed and believes that defendant, though often requested, has never furnished the security agreed upon, and the orator so understood when he purchased from Treadway;" "that at the time of said con-

veyance and as part of the same transaction, Treadway assigned to the orator his interest in said contract, and the orator bound himself in substance to indemnify Treadway against all damages resulting from said assignment."

The prayer was for an injunction restraining the defendant, his servants, etc., from cutting the growing timber on said land. A temporary injunction was granted by Chancellor TAFT August 7, and served August 10, 1882.

The answer, filed November 4, 1882, admits, that Treadway owned said land, and conveyed it to the orator on June 7, 1882; and avers that the defendant, about April 1, 1882, entered into a contract for the purchase of said wood, or trees, in substance as follows: Defendant was to pay Treadway $1,400 for all the trees on said lot, with the right to cut and remove the same within two years; the payment to be secured by the retention by the railroad company of $1.50 per cord, to be paid to Treadway until said $1,400 were fully paid. Avers that defendant obtained from the wood agent of the railroad company a letter which he delivered to Treadway, and which was satisfactory to him so far as defendant knew; that Treadway was in poor health and the contract was not at the time reduced to writing; but Treadway retained the letter and directed defendant to proceed with his cutting, etc., which defendant did, relying on said verbal contract and the promise of Treadway to execute a written contract, and continued his work until enjoined, June 9, 1882; that the contract was a valuable one; that when the orator took his conveyance he had notice of said contract; and that defendant was in possession; that the orator attempted to purchase the defendant's rights under the contract; that he indemnified Treadway against defendant's claims; that he received said letter from Treadway, and became entitled to said $1,400 to be paid by defendant. It also avers, that defendant understands that the orator claims said contract to be void under the Statute of Frauds, and that he purchased with a view of asserting such claim; but says that it is not; and if otherwise held, claims that the instruments of conveyance and indemnity constitute a sufficient written memorandum to satisfy the requirements of the statute; and if otherwise held, claims to be entitled to assistance of court to have proper writing executed. Claims the right to continue cutting

said trees; and avers that he made a contract with said railroad company which secured said $1,400 to Treadway in the manner agreed upon, which was all the security Treadway ever demanded, and which was available to the orator; that on June 8, 1882, the orator brought a bill in this court against defendant, complaining and praying substantially as in his present bill; that he obtained an injunction thereon from Chancellor VEAZEY; that the same was served on defendant; that defendant made answer substantially as in this suit, and on July 4, 1882, moved to dissolve said injunction, which motion was granted; that when the bill in the present case was served a notice of discontinuance of the former case was also delivered to defendant but no order of discontinuance has ever been made, and the said former case is still pending and is a bar to the present suit.

John Matot brought a cross-bill at the December Term, 1883, against said Battell and Freeman G. Wright, administrator of said Treadway's estate. The averments in the cross-bill were substantially like those in his said answer. The prayer was for specific performance, for injunction, and for damages.

At the June Term, 1883, the defendant made a motion to dissolve the injunction granted by Chancellor TAFT, and that the orator be ordered to file in court his former bill of complaint. The court overruled that part of the motion relating to the dissolution of the injunction, and overruled that part of the motion relating to the former bill on terms as to cost. The costs were paid and the suit was not entered.

The master found: That said Treadway in March, 1882, owned said land; that Matot had for many years been engaged in getting out wood for the railroad; that about this time he saw N. F. Clark, wood agent for the railroad, respecting the sale and delivery to the railroad of the wood on this land; that nothing definite was agreed upon except the prices to be paid, provided defendant could make satisfactory arrangements for purchase with Treadway.

"Shortly afterward Matot made an oral contract with Treadway to purchase of him all the standing trees upon said lot, to be removed within two years, for the price of $1,400, and as Matot was poor and financially irresponsible, it was agreed between him and Treadway that the payment of

the $1,400 should be secured; and, as it was expected and understood by them that said wood was to be sold to said railroad company, it was arranged between Matot and Treadway that the payment was to be secured by the written obligation or guaranty of the Central R. R. Co., or its proper officers, to be procured by the said Matot, binding that company to pay to Treadway as Matot delivered wood to it, $1.50 per cord until said sum of $1,400 should be paid.

"Matot thereupon, and prior to April 14, 1882, orally agreed with said Clark (who was authorized to make wood contracts in behalf of said company) to sell and deliver to the company along the line of said road, all of the wood upon said land, not excepting any logs or lumber, at the price of $3.50 per cord for hard wood, and $3.00 per cord for soft wood, the company to advance to him money to pay wages of choppers, and to pay directly to Treadway $1.50 per cord for whatever wood he should deliver, till Treadway should· receive $1,400, as above stated; and it was expected and understood by all parties that the agreement between Treadway and Matot should be reduced to writing, but it never was.

"Shortly previous to April 14, 1882, Matot wrote to Clark requesting him to come down and execute a written contract, according to previous understanding, but, as Clark could not then attend to it, he wrote the letter of April 14.

"This letter, received by Matot, was by him promptly delivered to Treadway, who retained it until the time of the subsequent sale to Battell, when it came into the possession of Battell.

"This letter is the only paper relating to security ever furnished·by Matot to Treadway."

That part of Mr. Clark's letter bearing upon this case is as follows: "In reply, say I will meet you as soon as I can, but cannot now name the day. Do not think I can possibly meet you before week after next, but you can go along, as we fully understand the trade, I think, and just as soon as I can possibly meet you I will do so and have it put in contract. I don't see but·what you can commence at once, and I will bill to Mr. Treadway as you directed, etc." The letter was dated April 14, 1882.

"Directly after, Matot commenced cutting, employing a

gang of men and teams for that purpose, and continued work on the lot until served with an injunction order in the suit first hereinafter mentioned, on June 9th, 1882. At that time he had cut upwards of 200 cords of wood, 16,000 feet of bass saw logs and 6,000 feet of hemlock saw logs, and 300 railroad ties, and had peeled some hemlock bark — of all which he has had the benefit." * * * * "Matot expected to make from $2,000 to $3,000, and possibly more, from the arrangement; and from all that appeared in evidence his expectations were correct."

* * * * *

"Finding nothing could be done with Matot as he wished, the orator sent an agent to see Treadway, with a view of purchasing the entire tract. Treadway informed him of the arrangement that had been made with Matot, and proposed to sell the land without the wood.

"Nothing came of this proposition, and after again attempting to trade with Matot without success, having then heard that Treadway claimed that Matot had not fulfilled the terms of the oral contract as to the wood, Battell visited Treadway on the 7th day of June, 1882, and proposed to buy the land and with it the Matot contract, and they closed the trade at $4,500, for which Battell was to have the $1,400, and take the Matot contract with the land. A deed was immediately executed and delivered. Treadway signed and gave to Battell at the same time an assignment of the Matot contract, which had been previously drawn for Mr. Battell by Mr. Hard his counsel.

"He also handed Battell the letter from N. F. Clark before referred to."

Treadway's assignment to Battell was as follows: "In consideration of one dollar I hereby sell and assign to Joseph Battell all my claims and interest in an oral contract heretofore made between myself and John Matot, whereby I agreed to sell to the said John Matot the growing trees on a certain tract of land on the right bank of Otter Creek in the town of Middlebury, by the terms of which contract the said John Matot was to have the right to have such trees remain and grow upon said land for the period of two years.

"I claim, however, that the said John Matot has forfeited

Battell *v.* Matot.

and lost all right to said trees by reason of his neglect and refusal to perform his part of said contract of sale."

At the same time said Battell gave Treadway a guaranty, agreeing to save him "harmless from all costs or damages that may accrue against" him by reason of any suit which Matot might bring to enforce the said contract.

Battell immediately commenced an injunction suit, the bill being filed June 8, 1882. An injunction was granted, but was dissolved July 22, 1882. Thereupon Battell commenced another suit, obtaining an injunction signed by Chancellor TAFT, August 7, and served August 10, 1882. At the December Term of the court, to which both suits were returnable, the second suit alone was entered. At the time the last bill was served, the following notice of discontinuance of the first suit, signed by the orator's attorney, was served on the defendant:

"To JOHN MATOT, ESQ.:
                    "Take notice that the chancery suit pending in the Addison County Court of Chancery in favor of Joseph Battell against you is hereby discontinued."

The other facts are sufficiently stated in the opinion of the court.

*Ormsbee & Briggs* and *Prout & Walker*, for the defendant.

He who seeks equity must do equity. Story Eq. Jur. s. 64; 1 Pom. Eq. Jur. 419, 443, 669. The orator must make Matot whole for his profits under the contract. Courts will not rescind a contract merely because it is verbal, at the suit of one party, when the other party is not in default. Browne Fr. ss. 123, 130; *Barnes* v. *Wise,* 3 Mon. (T. B.) 167; *Rowland* v. *Garman,* 1 Marsh. (J. J.) 76; *Hughes* v. *Hatchett,* 55 Ala. 539.

A third party cannot deny the obligation of an oral contract. Browne Fr. s. 135. The sale of standing trees did not require a deed. *Sterling* v. *Baldwin,* 42 Vt. 306.

The statute does not preclude a defendant in equity from asserting the fact of an oral contract by way of defence. *Adams* v. *Patrick*, 30 Vt. 516; *Montgomery* v. *Edwards*, 46 Vt. 151.

The Statute of Frauds cannot be used as an instrument of fraud. *Wood* v. *Rabe*, 96 N. Y. 414. The assignment with the deed from Treadway to the orator is a sufficient memorandum. Browne Fr. s. 344; *Drury* v. *Young*, 58 Md. 546; Wood Fr. 652; *Bailey* v. *Sweeting*, 9 C. B. (N.S.) 843; 10 Q. B. 140. The consideration need not be stated. Fry Sp. Per. 229, 242, 332; *Patchin* v. *Swift*, 21 Vt. 292; *Little* v. *Pearson*, 7 Pick. 301; *Gregory* v. *Gleed*, 33 Vt. 405; *Sage* v. *Wilcox*, 6 Conn. 81; *Packard* v. *Richardson*, 17 Mass. 122. The pleadings afford sufficient evidence to satisfy the statute. The benefit of the Statute of Frauds must be expressly claimed. *Skinner* v. *M'Douall*, 2 De G. & Sm. 265; 5 De G., M. & G. 461. The orator wholly fails to claim the benefit of the statute. Fry Sp. Per. ss. 375-7; Wood Fr. s. 700; *Adams* v. *Patrick*, 30 Vt. 516. The contract is admitted on all hands. There has been enough done under it by Matot to entitle him to have it put in writing and specifically performed, as sought by the cross-bill. *Griffith* v. *Abbott*, 56 Vt. 356; *Stark* v. *Wilder*, 36 Vt. 752; Browne Fr. ss. 465, 469; Fry Sp. Per. 251, 260; *Lester* v. *Foxcroft*, Lead. Cas. Eq. 557. The transaction was not within the statute. Browne Fr. ss. 225, 257; Wood Fr. 355, 370; Greenl. Ev. s. 271; *Sterling* v. *Baldwin*, 42 Vt. 306; *Fitch* v. *Burk*, 38 Vt. 683; *Smith* v. *Bryan*, 5 Md. 141; *Purner* v. *Piercy*, 40 Md. 221; *Cain* v. *McGuire*, 13 Mon. (B.) 340. The sale was valid; the license to go on the land and remove the timber was irrevocable. Browne Fr. s. 345; *Wood* v. *Manley*, 11 A. & E. 34; *Yale* v. *Seeley*, 15 Vt. 235; *Marshall* v. *Green*, L. R. 1 C. P. D. 35; 15 Moak Eng. Rep. 218; Wood Fr. 363. If we fail here we can recover damages under the cross-bill. *Drake* v. *Wells*, 93 Mass. 141. If the orator is entitled to more security the defendant is entitled to reasonable time

to procure it. 2 Story Eq. Jur. s. 1315; 1 Pom. Eq. Jur. ss. 433, 459; *Copper M. Co.* v. *Ormsby*, 47 Vt. 709; *Hagar* v. *Buck*, 44 Vt. 285; *Weeks* v. *Boynton*, 37 Vt. 302.

The defence of another action pending in the same court, between the same parties, for the same relief, was a good plea in bar to the bill. Story Eq. Pl. s. 736; Beames Eq. Pl. 137. No case in which the defendant has acquired rights can be discontinued behind his back. *Jenney* v. *Glynn*, 12 Vt. 480; *C. & P. R. R.* v. *Newell*, 31 Vt. 370; 1 Dan. Ch. 790; 23 Moak Eng. Rep. 852, *n.* After answer a defendant desiring to discontinue must obtain an order of the court. 1 Barb. Ch. Pr. 225. *Parker* v. *Concord*, 2 N. H. 36; High Inj. s. 998.

*E. R. Hard* and *Stewart & Wilds*, for the orator.

This was a contract for the sale " of an interest in or concerning land,"—R. L. s. 981—and did not operate to vest in Matot any title whatever to the trees. Browne Fr. s. 257; 2 Story Cont. s. 1440; 3 Par. Cont. 34; Benja. Sales, s. 126; Jones Chat. Mort. s. 145; *Crosby* v. *Wadsworth*, 6 East, 602; *Scorell* v. *Boxall*, 1 You. & Jerv. 396; *Carrington* v. *Roots*, 2 M. & W. 248; *Teal* v. *Auty*, 2 Brod. & Bing. 99; S. C. 6 E. C. L. 32; *Jones* v. *Flint*, 10 A. & E. 753; *Rodwell* v. *Phillips*, 9 M. & W. 501; *Slocum* v. *Seymour*, 36 N. J. 138; *Armstrong* v. *Lawson*, 73 Ind. 498; *Owens* v. *Lewis*, 46 Ind. 489; S. C. 15 Am. Rep. 295; *Kingsley* v. *Holbrook*, 45 N. H. 430; *Howe* v. *Batchelder*, 49 N. H. 204; *Green* v. *Armstrong*, 1 Denio, 550; 33 Pa. St. 376; 95 Id. 447; *Buck* v. *Pickwell*, 27 Vt. 158. The remarks of Judges STEELE and BARRETT in *Fitch* v. *Burk*, 38 Vt. 683, and in *Sterling* v. *Baldwin*, 42 Vt. 306, as to *Buck* v. *Pickwell*, *supra*, were purely *obiter*. As late as 1881, the court in *Cady* v. *Sanford*, 53 Vt. 633, cite *Buck* v. *Pickwell* with apparent approval. In some states the courts hold the sale of standing trees to be a sale of chattels, and not of an interest in land; but in those states the courts hold that so far as the contract is unexecuted by a

severance of the trees, the purchaser acquires no title; and
his only remedy is an action for damages.    *Gale* v. *Simonds*,
15 Gray, 441; *Drake* v. *Wells*, 11 Allen, 141; 1 Wash. Rep.
Prop. 9.    The contract amounts only to a license to the ven-
dee to enter, cut, and remove the trees; and the sale of the
real estate operated as an absolute revocation.    1 Wash.
Rep. Prop. 8; Browne Fr. ss. 22, 31; 2 Wait Act. & Def. 657,
and cases cited above.    Matot had forfeited all rights under
the contract, at the time the orator purchased the land,—
because he had failed to furnish the stipulated security.
The letter from Clark amounted to nothing as security.
Battell's knowledge of the contract does not affect his
rights.    *Drake* v. *Wells, supra.*    The writings passed be-
tween Treadway and Battell do not constitute a sufficient
memorandum.

"The memorandum must also contain the express stipu-
lation of the contract.    Thus, it must contain the *price*
agreed to be paid for property sold, where the contract
contained a stipulation as to price."    Browne Fr. ss. 346,
371-6; *Ide* v. *Stanton*, 15 Vt. 685; *Cooper* v. *Smith*, 15 East,
103.    The orator in his pleading has not waived the benefit
of the Statute of Frauds.    If the subject matter of the
contract is such as to bring it within its terms, a clear
case within the statute is alleged.    It would be pleading a
mere conclusion of law to allege that the contract was void
within the statute.    The material fact, viz.: that the con-
tract was *verbal*, is well pleaded, and the contract is repudi-
ated.    *Vaupell* v. *Woodward*, 2 Sandf. 143.    Matot is not
entitled to a decree in his cross-cause for specific perform-
ance.

When the answer denies the contract or puts the orator
to his proof of it, proof of a verbal contract will not avail.
*Bank* v. *Root*, 3 Paige, 478; *Cooth* v. *Jackson*, 6 Ves. 17;
Story Eq. Pl. s. 763, *note* 3; Fry Sp. Per. s. 336; *Champlin*
v. *Parish*, 11 Paige, 405.

If the orator alleges a parol contract void as within

the statute, that defence may be taken advantage of under demurrer. Fry Sp. Per. 332; *Cozine* v. *Graham*, 2 Paige, 177; *Vaupell* v. *Woodward*, 2 Sandf. *supra.* Or it may be shown under the general issue at law. *Hotchkiss* v. *Ladd*, 36 Vt. 593.

If the trees are chattels,—courts do not decree specific performance of contract relating to personalty. Bisp. Eq. s. 368.

The breach of the contract on the part of Matot, by his neglect to furnish security, precludes him from obtaining this or any relief in this cause. Bisp. Eq. s. 376; 1 Story Eq. Jur. s. 771.

"Where from the nature of the subject matter, a contract cannot be specifically enforced against one party, it will not be enforced at his instance against the other." 2 Lead. Cas. Eq. 1103; Fry Sp. Per. 198; 1 Story Eq. Jur. s. 778; Adams Eq. 193; 5 Wait Ac. & Def. 804; *Hill* v. *Crolls*, 2 Phil. 60, 62; *Flight* v. *Ballard*, 4 Russ. 298; *Bodine* v. *Gladding*, 21 Pa. St. 50, 53.

Objection to the pendency of another suit should have been made by plea. Story Eq. Pl. ss. 735-8.

The opinion of the court was delivered by

ROWELL, J. The objection of a former suit pending must be taken by plea and not by answer. This would seem to follow from the practice, which is, not to reply to such a plea, nor to set it down for argument, but to refer it on motion at once and of course to a master, to ascertain and report whether or not both suits are for the same matter; and if they are found to be, the plea is allowed, and if they are found not to be, it is overruled. Story's Eq. Pl. s. 743. But the plaintiff may except to the master's report, and bring the matter on to be argued before the court; and if he conceives the plea to be defective in form or otherwise, independent of the mere truth of the matter pleaded, he may set down the plea to be argued as in the case of pleas in

general. Tyler's Mitford, 393. But if he sets the plea down to be argued, he admits the truth of it, and it must be allowed if not defective. Story's Eq. Pl. s. 743.

There is an anonymous case in Mosely, 268, in which it is said that though this objection must be taken by plea in the Court of Exchequer, it may be taken by motion in the Court of Chancery. But in *Murray* v. *Shadwell*, 17 Ves. 353, Lord ELDON said he could find nothing in support of the motion except that case in Mosely, and that on looking into his own notes he found nothing confirming that case, nor in the books of practice, according to which the regular way of obtaining the reference was by plea.

In *Hertell* v. *Van Buren*, 3 Edw. Ch. 20, the objection was taken by answer, and the Vice-Chancellor held that it was not taken in the proper manner to enable the court to dispose of it, as it ought to have been taken at an earlier stage of the case, and therefore could not be allowed to prevail at the hearing.

The practice is different when two suits are brought in the name of an infant. In such case it is a motion of course to obtain a reference on the statement of counsel that both suits are for the same purpose, to see which of them is most for the infant's benefit, and so most proper to be proceeded with. *Sullivan* v. *Sullivan*, 2 Meriv. 40. But in 2 Hov. Sup. 481, it is said that this indulgence to an infant plaintiff is no reason why an adult defendant should obtain by motion what he ought to ask by plea.

The defendant moved before hearing that the orator be ordered to file his former bill of complaint in court; but the Chancellor overruled the motion on terms as to costs and without prejudice to the defendant's right to insist at the hearing on so much of his answer as relates to the pendency of the former suit or to substantiate such defence. But this does not enlarge the defendant's right in this behalf, but simply reserves it to him for what it is worth.

The orator in the original bill puts his case on the ground

that the contract in question is within the Statute of Frauds, and also that the defendant has broken it by not furnishing the stipulated security. To the first ground the defendant objects that the question of the statute is not raised by the bill, and that therefore the orator cannot avail himself of it.

The bill sets out the substance of the contract, and alleges that it was " a verbal contract, never reduced to writing in any form," and that, even if the proper security had been furnished by the defendant, which it denies, the contract " invests the defendant with no title to or legal interest in the trees uncut and standing upon said land " ; but no reference is made to the statute except what may be inferred from the language quoted. But the orator says that although he has not mentioned the statute in terms, he has stated facts that bring his case within it, which is enough, as to do more would be to plead a mere conclusion of law, which is unnecessary; and although this is certainly a general rule of pleading, both at law and in equity, yet the question must be determined by the practice that prevails in chancery rather than by any general rule of pleading.

In most of the books and cases the question is discussed with reference to the sufficiency of pleas and answers, as it is generally the defendant that seeks the aid of the statute; but the same rule must apply whichever party seeks its aid, and it is a question of equity pleading, and as applicable to one party or to one kind of pleading as to another. It was formerly held that specific performance should be decreed when the answer admitted the verbal agreement, although it insisted on the statute. *Child* v. *Comber*, 3 Swanst. 423, *n*. But it is now settled that though a verbal agreement be admitted, yet will not specific performance be decreed if the statute is insisted upon. 2 Story's Eq. Jur. s. 757. But the language setting up the statute must be clear and explicit to that end. Browne on Fraud. s. 519. Mr. Pomeroy says that when a verbal contract is alleged by the

plaintiff and the defendant admits it without at the same
time interposing the statute as a defence, the contract will
be established and enforced; and that the true ground of the
rule is, that an admission of the contract without at the
same time setting up the impossibility of enforcing it result-
ing from the statute, is a deliberate and formal waiver of
all benefit that might have been derived from it, this benefit
being personal, and therefore capable of being waived.
Pomeroy Cont. s. 140. Mr. Waterman says that when a
defendant admits a verbal contract, if he desires to claim
the benefit of the statute he must do so distinctly at the
time he admits it. Waterman Spec. Perf. s. 103; 2 Dan. Ch. Pr.
751,* n. (1). In Spurrier v. Fitzgerald, 6 Ves. 548, the Master
of the Rolls said the defendant ought to have interposed the
guard of the statute at the time she admitted the agree-
ment, and that it was then incumbent on her to say whether
she would avail herself of it. Beatson v. Nicholson, 6 Jur.
620, was a suit for the specific performance of an agreement
to accept a lease. The defendant by his answer admitted
the agreement, and said that at the expiration of the three
years mentioned in it he applied to the plaintiff to grant him
a lease upon the terms thereof, but whether such request
was made in writing he did not remember; and he submitted
that he was at liberty to revoke such request, and that he
was not bound to accept a lease. The statute was relied on
at the bar by the defendant's counsel, but that defence was
not in terms set up by the answer. Vice-Chancellor WIG-
RAM said that he did not see how the statute had any bear-
ing on the case, but if it had, that the rule laid down in
Spurrier v. Fitzgerald, 6 Ves. 548, with respect to a defend-
ant taking advantage of the statute, would preclude the
defendant; and he went on to say: "I do not mean that he
must claim the benefit in the very words of the statute, but
he must claim it in words equivalent, so as to call the atten-
tion of the plaintiff to the circumstance that the benefit of
the statute is claimed." Skinner v. M'Douall, 2 De G. & Sm.

265, was a suit to enforce specific performance of an agreement to take a house. The bill alleged that though no formal note of the agreement was ever made, yet that the same was proved and made out by the letters of the defendant and his agent. The defendant by his answer alleged that no formal note of the agreement charged by the bill was ever made, and denied that he had ever entered into any binding agreement, but he did not expressly claim the benefit of the statute, and it was held at the hearing that he was not entitled to the benefit of it.

In *Ridgway* v. *Wharton,* 3 De G., M. & G. 677, the defendant by his answer denied the authority of his agent to make the agreement sought to be enforced, and stated his belief that no note or memorandum in writing was ever made of any lease to be granted by him to the plaintiff, but did not set up the statute. The Lord Chancellor CRANWORTH held that he was entitled to the benefit of the statute at the hearing because he had denied the agreement, and stated the rule thus: "When a defendant admits the agreement, if he means to rely on the fact of its not being in writing and signed, and so being invalid by reason of the statute, he must say so, otherwise he is taken to mean that the admitted agreement was a written agreement, good under the statute, or else that on some other ground it is binding on him; but when he denies or does not admit the agreement, the burden of proof is altogether on the plaintiff, who must then prove a valid agreement capable of being enforced." This case seems to have been questioned or denied as to the latter part of this rule in *Heys* v. *Astley,* 4 De G., J. & S. 34, and *Homfray* v. *Fothergill,* L. R. 1 Eq. Cas. 567; and in the former case, although the existence of the agreement sought to be enforced was denied, yet Lord Justice KNIGHT BRUCE said that in his judgment, according to the rules and course of the court, the statute not having been set up, it could not be resorted to. But in this country the rule in this last point seems to be as stated by Lord CRANWORTH. Waterman Spec.

Perf. s. 103; *Ontario Bank* v. *Root*, 3 Paige, 478. We are not, however, prepared to adopt what his Lordship says is the effect of admitting the agreement without insisting upon the statute, for it is obvious that for many reasons outside of the statute the party would be at liberty to contend that the agreement was not binding upon him notwithstanding he had admitted the making of it. We think the true legal effect of the omission to set up the statute is as stated by Mr. Pomeroy, and by Lord ELDON in *Cooth* v. *Jackson*, 6 Ves. 12, where he says: " If the defendant admits the agreement, * * * but does not say anything about the statute, he must be taken to renounce the benefit of it, and there is no occasion to inquire about the part performance." In view of these authorities it must be held that the orator, by not expressly insisting on the statute in his bill, has renounced the benefit of it as a ground of relief.

We now come to the consideration of the cross-bill. By it the orator therein admits the contract to have been verbal, but insists that it is not within the statute, and if it is, that it is sufficiently evidenced by the deed from Treadway to Battell and the other writings that passed between them to satisfy the statute, and if not, that he has so far performed it as to be entitled to have it specifically enforced.

The defendant Wright, by his answer, admits the contract on information and belief, but expressly interposes the defence of the statute. The defendant Battell, by his answer, in substance admits the contract, but does not interpose the defence of the statute. The most he says about it is, that " he made his purchase, believing that the orator had no legal right, by reason of the absence of any written memorandum of the contract "; and by way of answering an allegation in the cross-bill to that effect, " denies that said instruments executed by and between the said Treadway and the defendant constitute any legal memorandum of the verbal contract between the orator and Treadway, sufficient to obviate the effect of the Statute of Frauds ap-

plicable thereto "; " denies that he is equitably or morally bound to carry out said agreement, or that either he or Treadway at the time of his purchase of the premises had, or that he has since had, any understanding that either he or Treadway was bound by said contract or intended to carry the same into effect;" and " denies that the orator is entitled to any relief whatever in the premises." This, as shown by the authorities already referred to, is not setting up the statute with sufficient certainty to entitle this defendant to avail himself of it.

As to Battell then, the case stands, that he admits the contract but does not insist upon the statute, and this leaves the contract to be enforced against him, if the orator is otherwise entitled to have it enforced; for when a verbal contract is alleged in the bill and admitted in the answer without at the same time interposing the statute as a defence, ground is furnished on which a court of equity will specifically enforce the contract notwithstanding the statute, and no part performance is requisite; in other words, the case is thereby taken out of the mischief of the statute. Pomeroy Cont. s. 140, and cases cited above.

And still further; we think this defendant is precluded from setting up the statute as a defence to the cross-bill because of his renunciation of it by not insisting upon it in his original bill; for the effect of such a renunciation is permanent, and not confined to the issue raised by those identical pleadings. Thus, if, having made such a renunciation, the party dies before decree, the effect will be extended to and bind his heirs and personal representatives, and the contract could be enforced against them in the suit revived for that purpose. Pomeroy Cont. s. 141; *Attorney General* v. *Day*, 1 Ves. Sen. 218, 221. And after admitting the contract without setting up the statute, a defendant will not be permitted to insist upon it in answer to the bill as amended. Pomeroy Cont. s. 141; *Spurrier* v. *Fitzgerald*, 6 Ves. 548, 555. And in *Patterson* v. *Ware*, 10 Ala. 444, the

defendant, having admitted a contract in his answer without setting up the statute, was not permitted to set it up in answer to the bill amended so as to allege the contract he had admitted.

It may seem at first sight that the law of this subject is rather too narrow and technical to be sensible; but we become reconciled to it when we consider that a party who admits a contract in his pleading, thus obviating the very danger the statute was intended to guard against, himself stands on pretty narrow ground morally and equitably when he asks to have that contract nullified as far as unexecuted solely because it does not happen to have been reduced to writing.

But it is contended that Matot is not entitled to have the contract specifically enforced because he has not furnished the stipulated security.

Treadway was so far satisfied with Clark's letter touching the matter of security that he "authorized Matot to proceed with the work," and he proceeded accordingly; and although Treadway represented to Battell that Matot had broken the contract in not furnishing the security, yet at the time Treadway sold to Battell he had never complained to Matot about that nor anything else, nor notified him to quit, and Matot did not know that Treadway made any claim that he "had forfeited and lost all rights" under the contract until Treadway's assignment of the contract to Battell was produced before the master.

If in respect of furnishing security, time is to be regarded as essential under the original contract, that quality of it was waived by Treadway when he authorized Matot to proceed with the work without furnishing security as stipulated; for the essentiality of time is matter of intention, and may be waived by the party entitled to insist upon it, and is waived by conduct on his part that shows he could not consistently have intended to insist upon it, or that he intended to treat the contract as still

Battell *v.* Matot.

subsisting notwithstanding the delay. And when the essentiality of time has been waived, it cannot be revived again without notice to the party in default, fixing a certain and reasonable time within which he is required to perform, in which case the time thus allotted becomes essential, and if the party neglects to perform within it, a court of equity will not aid him to enforce the contract, but leave him to whatever legal remedy he may have. Pomeroy Cont. s. 395 and *passim.*

On the same principle, when performance of a contract has been prevented by one party, the other party, in decreeing specific performance, will be given a reasonable further time in which to perform. There has been such prevention in this case by the injunctions. And it may be that by reason of the delay occasioned by the injunctions, Matot cannot now furnish the railroad company's guaranty as stipulated; if so, he is entitled, within a short time to be fixed, to furnish other good and sufficient security instead, to be approved by the Court of Chancery.

As Treadway's estate has no interest in this controversy, and as the orator in the cross-bill needs no decree against the administrator thereof if he could have it—as to which we have not inquired—we deem it best to dismiss the cross-bill as to the defendant Wright, with costs.

Decree reversed and cause remanded, with mandate.

POWERS and TAFT, JJ., did not sit.