## ROXANA CHICKERING, BY HER GUARDIAN, B. D. HARTSHORN, *v.* WILLIAM AND ROXANA BROOKS.

*Statute of Frauds, objection to Parol Testimony when taken. Mental capacity. Opinion of witnesses. Equity jurisdiction once attaching continues.*

1. Objection to the admissibility of parol evidence to prove an agreement within the Statute of Frauds may be taken, for the first time, on trial before a special master, when such evidence is received to prove the agreement which the master finds, said agreement not being admitted in the answer.

2. Where on trial before a special master, the mental capacity of the oratrix was in issue, non-expert witnesses who had associated with her, were, before giving their opinion as to her non-capacity, properly allowed to detail conversations with her as bearing upon this question, although the master found that, to his mind, such conversations did not indicate incapacity.

3. In such case the master should receive both the conversations and the opinion, since there may be many things connected with the conversation not reproduced to the trier, while the witness' opinion is deduced from the whole.

4. It is a question of law whether a person is of sufficient mental capacity to transact business, but a witness may express the extent of incapacity by that form of words, if, from the connection in which they are used, the trier must have understood them properly.

5. Oratrix sought to recover for certain money and notes passed over by her to defendants. Defendants claimed a gift. *Held,* that the declarations of the defendants, made to the attorney of the oratrix, in attempting to settle a previous suit about this same subject matter, to the effect that the defendants did not then claim a gift, were admissible.

6. *Held*, that the finding of the master in this case was that the oratrix had'
not sufficient mental capacity at the time she signed the release in·
question, and that the other facts reported by the master did not mod-·
ify this conclusion.

7. When the Court of Equity acquires jurisdiction for one purpose it may·
dispose of the whole matter in controversy.

8. Oratrix loaned the defendants certain money and notes upon their agree-
ment to secure her by mortgage upon certain land, and brought this·
suit to enforce that agreement. Defendants claimed a gift of the money
and notes, and produced a release under seal. The master found a
parol agreement to mortgage, and that the oratrix was *non compos*
when she executed the release. *Held*, that the agreement to mortgage
was within the Statute of Frauds, but that the court, having jurisdic-
tion to decree an avoidance of the release, would also decree a repay-
ment of the loan.

This was a petition in chancery and was heard before Rowell,.
Chancellor, at the June Term, 1888, on bill, answer, master's
report and exceptions of the defendants thereto. No copy of the
pleadings has been furnished the reporter. From the master's·
report it would appear that in February, 1887, the oratrix was
adjudged an insane person, and B. D. Hartshorn appointed her
guardian. The subsequent November Roxana died, leaving a
will, which was admitted to probate. One Ora Drew was·
appointed her administrator, with the will annexed, and as such
was, at the December Term, 1887, admitted to prosecute this·
suit.

When the oratrix died she was eighty-five years old. The
defendant, Roxana Brooks, was a niece of the oratrix. In 1883,.
she and her husband, the defendant William, were living on a
farm in Concord, of which the legal title was in one Hill. Will·
iam obtained a decree allowing him to redeem this farm upon·
the payment of $448.66. This sum he borrowed of the oratrix,.
giving her his note for the amount, dated April 24, 1883, and
he and his wife quit-claimed the farm to the oratrix upon condi-
tion that when this note was paid it should be redeeded to them.

The defendants claimed that the July following the oratrix.
gave this note to the defendant Roxana, but the master found
that this claim was not substantiated.

In November, 1883, the defendant William sold this Concord,
farm to one Morency. The oratrix deeded the farm to Morency,.

and took back a mortgage to secure the payment of six notes, one for $50 and five for $100 each, payable to her order. These notes were held by the oratrix as security for the note for $448.66.

In December, 1883, the defendants went to live with the oratrix upon her farm in Danville, and continued to reside with her until the spring of 1885. In February, 1885, the defendant William bargained for the farm in Danville known as the Harris farm. February 4, the farm was conveyed by Harris to the said defendant, in consideration of $600, $200 of which was paid in cash, and $400 in the notes of the defendants secured by mortgage on the premises. As further security the said defendant turned out four of the Morency notes. These notes had been paid to Harris and the mortgage indebtedness from Brooks to him fully extinguished. The $200 was furnished by the oratrix. The defendants claim that both the $200 and the Morency notes were given to them by the oratrix. The oratrix claimed that they were both a loan and that the defendants agreed to execute a mortgage on the Harris farm to secure her therefor. Upon this branch of the case the report of the master was as follows:

"I find that the oratrix let the defendants have the notes and the money upon an agreement that they would give her a mortgage or a deed of the Harris farm as security therefor. I find this fact entirely from parol evidence which was seasonably objected to by defendants."

Some time previous to the June Term, 1885, of the Caledonia County Court, a suit was begun by the oratrix against the defendant William and the Harris place attached. Previously to the December Term, 1886, the oratrix signed a written agreement that this suit might be discontinued without costs, and it was so entered at such December Term. On the 6th of December, 1886, the oratrix executed another release discharging the said William from all claims of all kinds whatever. This last release was under seal.

It was claimed on behalf of the oratrix that this last instrument was procured by fraud, and that when she executed the same she was incompetent thereto. The master found:

"At the time of the execution of said instrument she had been confined, to her bed for most of the time for two years ; she had become too feeble to write ; was almost blind ; had not physical power sufficient to make her mark upon the paper without assistance. I am satisfied that her mind had become weakened and impaired by age and physical infirmities ; that at times she would seem bright and capable of understanding business to some extent and at other times she would become confused in mind and of but little understanding.

"She had been frequently urged to sign papers before this time and had refused ; she had refused to sign a like paper at an earlier date when fully and fairly explained to her. The accumulation of costs of suit and large attorney fees had been frequently brought to her attention by defendant ; he had given her to understand that the suit and costs might be stopped and they could settle their matters between themselves and save the excessive burden of costs. From all the circumstances and evidence in the case I am more inclined to the opinion that she did not understand the effect of the instrument which she signed ; that she only intended to have the costs and the suit stopped ; that the representations of the defendant that he wanted her to sign a paper to stop suit and costs, and the paper itself, when read to her, produced one general impression on her mind and that her understanding of the transaction was that she was only stopping the suit and costs and not discharging her claim, and I so find."

In a supplemental report the master further found :

"In answer to request No. 6, I will say I think she did have sufficient mental capacity to understand her real relations to the defendants, and whether they owed her or not, and as to amount of property, and whether she wanted suit prosecuted or not, and whether she wanted to assist defendants. I do not think she had mental capacity sufficient to understand the effect of the

written instrument alone or by any assistance that it appears she had from Arad Wells. I do think if the paper had been plainly explained to her, and she had been told fully what its effect would be upon her rights, that she would have understood the instrument and explanation together and comprehended what she was doing."

Upon this question of mental capacity the master received, against the objection of the defendant, the testimony of certain witnesses, not experts, but who were acquainted with the oratrix and had associated with her more or less, who were allowed to state their opinion as to her mental capacity and to detail certain conversations with her as bearing upon this question of capacity. The master found that these conversations did not tend to show to his mind that she was *non compos.*

H. C. Ide, of counsel for the oratrix in this suit, and who had been her attorney in the suit at law, was permitted to testify as follows to a conversation between himself and the defendant William while the suit at law was pending :

" I told him we could beat him out of his boots, and that if he expected that he could convince any twelve men that Roxana Chickering, as poor as she was and as stingy as she was, had given him six hundred dollars he would be almightily mistaken.

" Said he didn't claim she had given it to him. I asked him why he didn't pay her, then ; and he said he was ready to pay her in the way he agreed to, and said he agreed to support her for life if she would let him have that property he had to buy the Harris place with. * * * I urged him to settle the matter by giving security on the Harris place for her support. He refused to do it and said he should try the case." '

The orator was also allowed, against the objection of the defendants, to ask this question :

" From your knowledge of Roxana Chickering, as above stated, state whether or not, in your opinion, she has, at any time during the last five years, had sufficient mental capacity and judgment to comprehend her financial situation and to transact business intelligently and understandingly ?"

Ans.—" No, sir, I don't think she has."

The defendant filed the following exceptions to the master's report:

1. The said defendant excepts to said report because the referee admitted oral evidence of an agreement by said defendant to give said plaintiff a deed or mortgage, against the objection and exception of the defendant.

2. Because the referee permitted the evidence of conversations of the plaintiff to be shown, as set forth in the referee's minutes.

3. Because witnesses not experts were allowed to give opinions of plaintiff's mental capacity under circumstances shown in the case.

4. Because of the admission of evidence in all other cases, as shown by the report and the referee's minutes, which is referred to, when objected to by the said defendant, Wm. Brooks.

The chancellor decreed:

1. That the second, third and fourth exceptions to the master's report be overruled and the report accepted.

2. That the first exception to the report be sustained, as it seems from the report that the master understood and treated the objection to the parol evidence as going to its non-admissibility to prove the agreement found upon it.

3. That the paper writing of December 6, 1886, mentioned in the report, purporting to be a discharge of all claims, etc., to be set aside and held for naught.

4. That the orator is not entitled to a decree for the specific performance of the parol agreement found, nor to have the sum due him made a charge upon the Harris farm; but, inasmuch as this court has jurisdiction of the case for the purpose of setting aside said discharge, the orator is entitled to a decree for the amount due him, namely, $448.66, with interest thereon from April 24, 1883, and the further sum of $200, with the interest thereon from February 4, 1885, and it is so decreed.

From this decree both the oratrix and defendants appealed.

*Ide & Stafford*, for the oratrix.

The conversations with the oratrix were admissible as bearing upon the question of her capacity. *Crocker* v. *Chase*, 57 Vt. 419 ; cases cited Roberts' Digest, pp. 287, 288 ; *King* v. *Davis*, 60 Vt. 502.

The objection to the admission of parol evidence to prove the agreement to mortgage cannot be sustained. Not having been insisted on in the answer it must be considered as waived. *Howe* v. *Chesley*, 56 Vt. 727 ; *Battel* v. *Matot*, 58 Vt. 271.

The objection to the admission of this evidence before the master was general, and not therefore sufficient to raise the question of the Statute of Frauds. *Weeks* v. *Barron*, 38 Vt. 420 ; *Montgomery* v. *Edwards*, 46 Vt. 151 ; *Strong* v. *Dodd*, 47 Vt. 354.

The court should exercise jurisdiction. No objection has been made to the want of it and any such objection comes too late in this court. *Canfield* v. *Andrews*, 54 Vt. 1 ; *Smith* v. *Rock*, 59 Vt. 232.

But the court has jurisdiction to set aside this release and will therefore retain it. *Mann* v. *Betterly*, 21 Vt. 326 ; *Holden* v. *Crawford*, 1 Aik. 390 ; *Howard* v. *Edgell*, 17 Vt. 9 ; Story Eq. Jur., ss. 692–703.

*Bates & May* and *M. Montgomery*, for the defendants.

The court has no jurisdiction to give such a decree as the one appealed from. This bill was brought to compel the execution of a mortgage, and the decree is for the payment of a sum of money.

The report does not show such mental incapacity as to warrant the setting aside of the release. *Stewart* v. *Flint*, 59 Vt. 144, and cases.

The opinion of the court was delivered by

VEAZEY, J.   The defendant excepted to the report of the master *first* because he admitted oral evidence of an agreement by the defendants to give the oratrix, Roxana Chickering, a mortgage or deed of the Harris farm as security for the $200 and the Morency notes and mortgage which the defendants had the benefit of in the purchase and payment of the Harris farm.

In the decree of the Chancellor this exception was sustained, and we think correctly.   Oratrix's counsel claim that the evidence could not properly be excluded because the issue between the parties was whether by their arrangement in respect to this money and notes, it was a gift, loan or trust, and that the objection to the evidence was general and therefore not sufficient to raise the question of the Statute of Frauds which is now relied upon in defence.

There would be force in this position if it were not for the fact that the master understood and treated the objection to the parol evidence as being put on the ground now claimed, viz. : to establish a contract by parol that under the Statute of Frauds can only be established by the contract itself in writing.   The master negatives the fact of a gift by the oratrix and finds by this evidence an agreement by the defendants to give a mortgage or deed as security, the master treating and substantially finding the transaction as to the money and notes was a loan to the defendants.

The real point now is, not whether this evidence was admissible on some other issue, but whether it was admissible under the defense of the Statute of Frauds.   On this point the oratrix's counsel claim the statute is not available to the defendants because they did not make that defense in their answer, and cite *Howe* v. *Chesley*, 56 Vt. 727, and *Battel* v. *Matot*, 58 Vt. 271.

In the latter case, Rowell, J., after a long discussion says : " We think the true legal effect of the omission to set up the statute is as stated by Mr. Pomeroy, and by Lord Eldon in *Cooth*

v. *Jackson*, 6 Ves. 12, where he says : ' If the defendant admits the agreement   *   *   *   but does not say anything about the statute he must be taken to renounce the benefit of it.' "

It does not appear in this record that the defendants admitted the agreement.   Indeed it would seem they must have denied it as they made the issue of a gift, which was inconsistent with such admission.   No copy of the pleadings was furnished.   In the absence of anything to show an admission of the contract upon which the oratrix relied, we think it was seasonable for the defendants to make the defense of the statute when oral evidence was offered to show a mere parol agreement to deed, and this by objection to the evidence on this ground.   See authorities cited in *Battel* v. *Matot, supra.*

The second, third and fourth exceptions to the report are based on alleged error in the admission of evidence as to the oratrix's mental capacity when she signed the release of December 6, 1886.   These exceptions were overruled by the Chancellor and we think correctly.   Non-expert witnesses on both sides were allowed to state the opportunities they had for judging as to her mental capacity, and to this end, to detail their conversations with her over a period of about three years, touching the suit she had brought against the defendant William Brooks, and other matters, and then to state their opinions as to her mental capacity. The testimony was admitted only on the question of mental capacity.   This is in accordance with the settled practice in this State where mental capacity is in issue.  Her conversations with these witnesses were not admissible for the purpose of establishing that a fact was as she stated it to be, that is, for establishing any fact embodied in the declaration and we do not understand they were allowed to have that effect by the master.   Neither were they conversations at a time when she was conceded to be in full possession of her mental faculties, as in *Crocker* v. *Chase*, 57 Vt. 413.   Defendants' counsel urged with more emphasis that the questions calling for the opinion of the witnesses in several instances as to the oratrix's capacity to transact business intelligently and understandingly, were improperly admitted.

This point was before the court in *Fairchild* v. *Bascomb*, 35 Vt. 398 ; but the court only pronounced the question objection-able without saying it was error, on the ground that what is sufficient capacity to transact business is a matter of law depending somewhat on the nature of the business, and the witness may not correctly apprehend the rule of law. The court there said the question should be framed so as to require the witness to state the measure of the person's capacity in his own language, and by such ordinary terms or forms of expression as will best convey his own ideas of the matter ; or, to use Judge Ruffin's expression in *Crowell* v. *Kirk*, 3 Des. 358, to state the degree of intelligence or imbecility " in the best way he can."

We think this indicates the proper form of inquiry ; but we hesitate to hold that the form allowed in this case constitutes reversible error in a case tried by an experienced lawyer as this was, and therefore not liable to be misled by form of question, and especially in view of his finding as to the oratrix's capacity generally which was in substance mainly contrary to the opinions as expressed by the witnesses.

The master says that certain witnesses would state their acquaintance with Roxana and conversations with her as to the matter in issue and other matters, and then give their opinion of the mental capacity, when, in the opinion of the master, the conversations themselves did not indicate any mental incapacity ; and the defendants excepted to this testimony. Defendants' counsel now claim that it was error to admit opinions under such circumstances.

We do not think the admissibility of the opinion depends upon the question whether the trier of the case thinks the declarations of the person do or do not indicate mental incapacity. Opinion as to capacity depends not only on conversations which the witness has had with the person who is the subject of inquiry, but on his opportunities of observation by acquaintance and contact. An opinion is not admitted until the basis of the opinion is shown. The words alone of the person as related by the witness to the trier might not indicate to the latter any incapacity,

when, if he had been in the place of the witness and seen the person from time to time, when the conversations took place, and observed his manner, bearing and look as the witness saw it, he might have come to the same conclusion as the witness. One may be fully impressed with the fact of another's insanity when the words alone of the latter, simply detailed to a third person, might indicate sanity.

If the opinion of a witness improved to testify to mental incapacity is founded upon nothing but conversation, and that fails to indicate unsoundness of mind, then there would be propriety in rejecting the opinion. But this would rarely happen. Conduct, appearance, as observed in conversations and otherwise, how long has the witness known the person, how intimately, under what circumstances, in what connections, what observations were made of his conduct and appearance, what conversations were had with him; this indicates the usual line of inquiry. The counsel urging this point of exception fail to note, possibly overlooked, the distinction between conversations offered with other matter as the basis of opinion, and declarations of a testator which have no tendency to prove contemporaneous incapacity, and offered, not as the basis of the opinion of the witness, but under a claim that they, of themselves, tended to show incapacity, which was the case of *Crocker* v. *Chase, supra.*

The testimony of Mr. Ide as to his talk with defendant Brooks was admissible for the purpose of showing that the latter had said that he did not claim the money and notes in question as a gift to him, he having made the issue in this case that it was a gift. This evidence was not obnoxious to the rule that excludes propositions in the nature of overtures of pacification and settlement. Greenl. Ev. s. 192.

There being no error in the rulings of the master on the evidence, his finding on the question of mental capacity is conclusive to the effect that she had not sufficient capacity to understand the effect of the instrument of release which she signed, either alone or by any assistance which she had. *King* v. *Davis,* 60 Vt. 502. His other statement that if the paper had been

plainly explained to her and she had been told fully what its effect would be upon her rights, she would have understood the instrument and explanation together, and comprehended what she was doing, is not sufficient to nullify the master's conclusion, as first stated. If masters would find and report one way or the other squarely on the question of mental capacity they would show more capacity themselves, and save great mental strain upon lawyers and judges in trying to determine what they have found.

These results preclude a holding that the transaction as to the money and notes created a trust chargeable upon the Harris farm, or a decree of specific performance of the agreement. But it was a case for equity jurisdiction notwithstanding for the purpose of setting aside the discharge under seal.

*The decree below, covering the whole case, was therefore warranted and is affirmed and cause remanded.*