### EDGAR S. PIKE *vs.* SAMUEL PIKE.

May Term, 1897.

Present: Ross, C. J., Rowell, Tyler and Start, JJ.

*Statute of Frauds—Cause Retained for Further Decree—Specific Performance.*

The statute of frauds, even though insisted upon in the answer, is waived by allowing the parol evidence to be received without exception.

The cause being a proper one for specific performance, but not ripe for a complete decree, a partial decree was entered and the cause retained.

The parties made a contract in 1869 under which they operated until 1889, when, the circumstances having changed, they attempted to substitute a new contract but succeeded as to a portion, only, of the matter covered by the first. *Held*, that the original contract remained in force except so far as modified by the new one.

BILL IN CHANCERY. Heard upon bill, answer and master's report, at the December Term, 1896, Bennington County, *Thompson*, Chancellor. Decree for orator. The defendant appealed.

The master reported in substance as follows: The orator is a son and only child of the defendant and became of age August 25, 1869. In November of the same year he went out to work for a month. At that time his father owned and lived upon the farm described in the petition, then worth about four thousand dollars, and the orator's sister, Alma, was living at home, being in poor health and unlikely to live many years. While the orator was thus out at work the defendant asked him to come home and help carry on the farm, telling him that, if he would do so, when the defendant and his wife, the orator's mother, were through with the property, everything should be his, but that Alma must be cared for while she lived. The defendant then owned the farm, well-stocked and supplied with tools and free of incumbrance, but owed about three hundred dollars for a piece of land recently purchased. The orator relying upon the defendant's statement went home and for nearly twenty years thereafter worked faithfully and diligently in carrying on the farm; and his labor was worth twenty-five dollars a month. The defendant also worked faithfully. The orator was married in 1873 and has two children, one born in 1880 and one in 1884, and his family have been supported out of the proceeds of the farm. In 1873, the orator and the defendant built a new house upon the farm from their joint funds. Alma died in 1879 and the orator's mother in 1883. Until the spring of 1889, the defendant

made all contracts and received all moneys and had the general management of affairs, the orator receiving from him whatever he had and accumulating nothing of his own. No writings had been made, or agreed to be made, until March, 1889, when the orator, ascertaining that the defendant was about to marry again, suggested to the defendant that writings should be executed. It was then agreed that the defendant should deed to the orator an undivided half of the farm, and give him a bill of sale of an undivided half of the personal property, not including debts due, money on hand or in the savings bank, and lease to the orator the defendant's half of the farm, to be carried on "upon the halves" so long as he should do so in a husband-like manner. The evidence was conflicting as to whether the defendant agreed to bind himself by writing that the orator should own the defendant's half of the farm at his decease. The defendant objected to executing such a paper, saying that the orator, as his only child would inherit it without a writing. This agreement is not found established. The deed of an undivided half of the farm and the bill of sale of an undivided half of the personal property were duly executed March 18, 1889, but the execution of the lease was postponed to another day, by reason of the lateness of the hour, and thereafter the defendant declined to execute it, and no other papers were made. The present value of the farm is about three thousand dollars. The defendant was married to his present wife April 27, 1889. On March 18, 1889, the orator and defendant owed nothing to outside parties and the defendant had in cash on hand, debts due, and deposit in the savings bank, about seven hundred dollars. When this petition was brought both families occupied the homestead, but the defendant soon afterwards moved away. From the spring of 1889 to the spring of 1891, the parties carried on the farm as tenants in common, each taking one-half of the products. In the spring of 1891, the defendant leased his half of the farm to

the orator "upon the halves," and that arrangement has been continued ever since. The defendant is 79 years of age and somewhat broken in health. The house is fairly well arranged for two families, but the farm cannot be divided without disproportionate decrease in value.

The chancellor decreed specific performance of the agreement to lease and, further, that at the decease of the defendant the latter's title to his undivided half of the farm should vest in the orator, his heirs and assigns. The latter portion of the order is referred to in the opinion as paragraph 3.

*Batchelder & Barber* for the defendant.

*Joel C. Baker* for the orator.

Ross, C. J. The answer of the defendant has not been furnished. We are, therefore, not informed whether it sets up and relies upon the statute of frauds as a defense. If it does, the defendant has waived it by allowing the contract of 1869 and the unexecuted part of the contract of 1889 to to be proven by parol testimony without exception. As applicable to these contracts, that statute does not render them void nor unenforceable if allowed to be proven by testimony, not in writing signed by the party to be charged. *Montgomery* v. *Edwards*, 46 Vt. 151; *Strong* v. *Dodds*, 47 Vt. 354; *Battell* v. *Matot*, 58 Vt. 271; *Scofield* v. *Stoddard*, 58 Vt. 290. The solicitor for the defendant does not insist upon the statute as a defense. The orator is therefore entitled to have the contract of 1889 specifically enforced. This affirms the decree in regard to the lease of the half of the farm to which the defendant retained the title.

The solicitor for the defendant contends that the contract of 1889 merged the contract of 1869. There is no contention that it did not so far as it went. The orator contends that it did not embrace all that was contained in the contract of 1869. By the latter contract the defendant agreed that if the orator would come home and help carry on the farm, the orator should have all the property when

the defendant and his wife were through with it, except that his sister, Alma, who was in poor health, and not expected to live long, must be cared for while she lived. The orator entered upon the performance of this contract and fulfilled his part of it for nearly twenty years. In the meantime the sister and his mother, the defendant's wife, had deceased. The property had been added to. The defendant had become advanced in years, and was about to marry. The orator was the defendant's only child and heir, and would, as heir take all the property, if the defendant did not marry again and died without making a will. Up to this time the defendant had controlled all of the property and made the contracts in regard to it. There had never been any agreement in regard to making writings of any kind. Nevertheless, the understanding and agreement of 1869 necessarily involved that the defendant, his wife and daughter should be supported out of the property and their joint earnings, and that the defendant beyond using what was fairly needed for his support and that of his wife and daughter, would do no act which would prevent the residue of the property from coming to the orator at his decease, and would do everything necessary to have that residue vest in the orator. During this time the house on the farm had been rebuilt, and the orator with his family occupied one part, and the defendant another part of it. The contemplated marriage of the defendant was an act which might defeat the property which would remain at the decease of the defendant, or some portion of it, from coming to the orator by heirship. If the defendant's wife should survive him she would, under the law, take more or less of the property. The orator, fearing this, solicited the defendant to execute such writings as would effectuate their contract of 1869. Their negotiations resulted in the defendant's giving the orator a deed of the undivided half of the farm and a bill of sale of an undivided half of the personal property excepting debts due, cash on hand or money in the savings bank, and agreeing to execute a lease

of the other half of the farm and personal property to be carried on by the orator "upon the halves" so long as he should carry it on in a good husband-like manner. There was not time, that day, to have the lease drawn and executed. Subsequently the defendant declined to execute it. The decretal order compels the execution of the lease. As we understand the findings of the master, the defendant was to have, as his own, the debts due, cash on hand and in the savings bank amounting to seven hundred dollars, and was also to have one-fourth of crops and income of farm and personal property conveyed and leased, as his own, freed from the provisions of the contract of 1869, except that this property was to be used for the support of himself and contemplated wife. The orator urged the defendant to give him a deed of the leased half of the farm and a bill of sale of the leased half of the personal property to take effect at the decease of the defendant, or, some writing which would accomplish that purpose. The defendant said, such a writing was needless because the orator was his only child, and this property would all be the orator's at his decease, without any writing. No agreement was reached in regard to this property. It is manifest that the parties did not take the property agreed to be leased out of the operation of the parol contract of 1869, for they came to no agreement in regard to it. The decretal order adjudges that the orator is entitled to it at the decease of the defendant, and that the title thereto shall then vest in the orator, his heirs and assigns. We think this order too broad. It impliedly, at least, prohibits the defendant from raising money on it for his own support if it should be needed for that purpose. The conveyances, and the lease, if the orator shall carry on the leased property in a good, husband-like manner, release the orator from doing more to help the defendant manage and carry on the property. But if the orator should fail to carry on the leased property in a husband-like manner, then the lease becomes void, and under the contract of 1869 the orator would be under an obligation

to help the defendant carry on and manage it. If the orator fulfills the conditions of the lease, or, failing that, fulfills the contract of 1869 in regard to helping the defendant, in carrying on and managing the property covered by the lease, he will, unless the defendant shall need to use some of it for his proper support according to his condition and rank in life, be entitled to the property covered by the lease. At the present time, this portion of the property is hedged about with so many contingencies, that it is not ripe for a decree. But the court of chancery having properly taken the case in hand for compelling specific performance of the agreement in regard to the lease, considering the age of the defendant, and the fact that he has married, and his wife may outlive him, will hold the case to give such relief in regard to the property leased as the orator may be equitably entitled to, under the contract of 1869 modified by the contract of 1889, at the decease of the defendant. By the two contracts, it was contemplated that the defendant might occupy the part of the house he was occupying when the agreement of 1889 was made. As that agreement contemplated his marriage, he should be allowed with the seven hundred dollars surrendered to him and the fourth of the crops of the farm and income of the personal property reasonably to support himself and wife during his life, even if he should have to raise some of the means out of the property leased. If his wife should first decease, he might need the personal care of the orator. Such care was contemplated by the agreement of 1869, and not relinquished by the contract of 1889.

> *The decree of the court of chancery is reversed as to the paragraph numbered 3 and confirmed as to other portions. The cause is remanded with a mandate, to hold the case in regard to the property embraced in paragraph 3, in accordance with the views herein expressed, and at the decease of the defendant to enter such a decree in regard to the property embraced in this paragraph as equity may require.*